**Lucille LEDFORD and Billy C. Ledford, Plaintiffs–Appellants,**

v.

**Dr. David MOSKOWITZ and Hiwassee Mental Health Center, Defendants–Appellees.**

Court of Appeals of Tennessee, Eastern Section.

Sept. 15, 1987.

Rehearing Denied Oct. 16, 1987.

Permission to Appeal Denied by Supreme Court Dec. 28, 1987.

County, Tennessee, in 1982 and 1983. The sole issue on appeal is whether Plaintiffs' witness, Dr. William H. Stuart, qualifies as an expert medical witness under the requirements of T.C.A. § 29–26–115(a), (b) (1980), which sets the standards for expert testimony in medical malpractice actions.

## I.

Lucille Ledford resides in Ducktown, Polk County, Tennessee, a small town in the southeastern corner of the state, near the Georgia–Tennessee border. In September of 1982, she was seen by James Davis, a psychologist for Hiwassee Mental Health Center, which has offices in Polk, McMinn, and Bradley counties. Thereafter, she was treated by Dr. David Moskowitz, a psychiatrist, who was the Medical Director of the Hiwassee Center and who admitted her to the Cleveland County Hospital that September with a diagnosis of dysthymic disorder. Following her release from the hospital, Dr. Moskowitz and staff members of the Center saw her on an out-patient basis through January of 1983. As part of Ledford's treatment, Moskowitz prescribed anti-psychotic medications, from which Ledford suffered side effects.

On January 22, 1983, Ledford was seen by Dr. Alfred Bryan, who admitted her to Copper Basin Medical Center in Polk County, Tennessee, and prescribed anti-psychotic medication. She remained there until February 7, 1983, when she was transferred to Piedmont Hospital in Atlanta, Georgia.

Upon admission to Piedmont Hospital, she was diagnosed as having an acute onset of drug-induced extra-pyramidal syndrome (EPS), similar to Parkinson's disease. She was treated by Dr. William Stuart, a neurologist, for a period of four weeks in the hospital and followed thereafter on an out-patient basis. The anti-psychotic medications were discontinued, and she markedly improved.

The complaint of medical negligence was filed in Bradley County, Tennessee, and a motion for summary judgment was filed in response. The motion was supported by

J. Estes Cocke, East Ridge, for plaintiffs-appellants.

John F. Kimball, Cleveland, E. Blake Moore, Chattanooga, for defendants-appellees.

## OPINION

ANDERSON, Judge.

This is an appeal from a summary judgment granted by the trial court to Defendants, Dr. David Moskowitz and his employer, Hiwassee Mental Health Center, in a medical malpractice action. The case arose out of treatment administered by Defendants, Dr. David Moskowitz and Hiwassee Mental Health Center, to Plaintiff, Lucille E. Ledford, in Bradley County and Polk

the proof of Dr. John Parkinson and the Defendant Moskowitz. The Plaintiffs filed an affidavit and deposition for proof of Dr. William Stuart, the treating neurologist of Atlanta, Georgia, in opposition to the motion for summary judgment.

On the morning of trial, June 6, 1986, Appellants' attorney announced that Stuart's deposition was his only medical evidence. The Defendants then renewed their motion for summary judgment, which the trial court took under advisement until October of 1986, when it sustained and dismissed the case.

T.C.A. § 29–26–115 defines the claimant's burden of proof and the standards for qualifying expert medical testimony in part as follows:

(a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;

. . . .

(b) No person in the health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a) unless he was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make his expert testimony relevant to the issues in the case . . .

The trial court's memorandum opinion granting Defendants' motion for summary judgment included the following:

. . . In order to be competent it is necessary that the proposed expert be familiar with the standard of care practiced by physicians in the community wherein the act is alleged to have been committed or that he practice the specialty of the medical doctor being sued. In the instant case, the deposition of Dr. William H. Stuart, admittedly the only expert witness for the Plaintiff, reveals that he is not familiar with the standard of care being practiced in Bradley County, Tennessee and that he is a neurologist and internal medicine physician whereas the defendant doctor in this case is a psychiatrist.

Inasmuch as the 'expert' witness of the plaintiff does not have the qualifications and/or knowledge required by the laws of the state of Tennessee to be able to testify in this malpractice case and no other expert testimony being available to the plaintiff at the time of this motion, it follows that the deposition of Dr. Stuart is of no value in contravention to the affidavits of the plaintiffs [sic] expert witnesses. The motion for summary judgment is accordingly granted.

After a review of the record, we believe that the trial court's memorandum opinion incorrectly states the requirements of the statute, and that Stuart's proof sufficiently meets the standards set out in the statute to create a genuine issue of material fact.

II.

*A. Specialty of Expert*

■ The statute makes clear that there is no requirement that the expert witness be in the same specialty of the medical profession as the defendant; only that the expert be licensed to practice a specialty which makes his testimony relevant to the issues in the case. The Defendant Moskowitz is a psychiatrist, and the ultimate issue is whether he negligently prescribed and supervised the administration of anti-psychotic drugs for Ledford. Stuart is a neurologist who is board certified in neurology and psychiatry, and who testified he frequently saw patients with psychiatric problems and referred them. He testified he kept up with the literature and part of his training in neurology was in psychiatry. Additionally, Stuart was a treating physician who supervised Ledford's recovery from the condition of extra-pyramidal syndrome, charged to have been induced by the anti-psychotic medications prescribed by the Defendant Moskowitz. He testified about his familiarity with anti-psychotic

medications, restrictions on their use, and the necessity for close supervision. He had, in the past, been a professor of neurology at Emory University. We think these facts make his testimony "relevant to the issues in this case."

In *Searle v. Bryant,* the Supreme Court made clear that a medical expert witness did not have to be in the same specialty as the defendant when it found that an infectious disease specialist and clinical microbiologist, who was not in private practice, met the requirements of the statute and could testify as a medical expert witness against a surgeon on the issue of management of surgical wound infections. 713 S.W.2d 62 (Tenn.1986). Earlier, this Court in *Stokes v. Leung,* 651 S.W.2d 704 (Tenn. App.1982), found that a psychiatrist met the requirements of the statute and could testify against a cardiologist or internal medicine specialist as a medical expert witness.

### B. Standard of Care

The statute likewise makes clear that the medical expert is required only to testify about the standard of acceptable practice in the community in which defendant practices, or in a similar community. Moskowitz practiced in the southeastern Tennessee counties of Bradley, Polk, and McMinn, where his employer had offices.

■ Stuart testified that his Atlanta practice was a referral practice, with one-third of this practice coming from referrals from small towns outside the Atlanta area, which included referrals all over the State of Georgia, including northern Georgia and southeastern Tennessee in the Ducktown and Cleveland areas (Polk and Bradley counties). Stuart testified that he was familiar with the standard of care in small towns all over Georgia. He said that he was familiar with the standard of care in Ducktown and Cleveland in a broad sense, and that he saw what doctors were doing and the standard of practice from examining the patients' treatment records on referrals from outlying areas, and that recommendations for treatment were sent back to the referring physicians in the pa-

tient's home area. Stuart did testify that he had not been to Cleveland, Tennessee, and did not know the number of hospitals, doctors, or physicians located there. Precise knowledge of the specific medical statistics of a particular community, however, is not a requirement of the statute. *Accord, Searle v. Bryant,* 713 S.W.2d. at 64–65.

In *Sutphin v. Platt,* Justice Fones analyzed the geographic component to the relevant standard of care, pointing out that it

evolved out of a recognition that medical customs or practices varied depending on the particular area in which the physician practiced.... Traditionally, the relevant geographic area was strictly defined. The plaintiff was required to introduce evidence concerning the standard of care in the strict locality where the defendant worked. ... However, in light of a modern trend towards the national standardization of medical practices, especially in specialties, courts and legislatures have gradually expanded the relevant geographic area for proving the medical standard of care.... Indeed, the Tennessee Legislature has adopted a somewhat broadened definition of the geographic component to the medical standard of care, requiring proof of "[t]he recognized standard of acceptable professional practice ... in the community in which [the defendant] practices *or in a similar community....*" T.C.A. § 29–26–115(a)(1).

720 S.W.2d 455, 457 (Tenn.1986). (citations omitted) (emphasis added). We follow that analysis here.

### C. Summary Judgment

"In reviewing a summary judgment, the court must view all pleadings and affidavits in a light most favorable to the opponent of the motion and all conclusions of fact derived therefrom must be similarly construed." *Wyatt v. Winnebago Industries, Inc.,* 566 S.W.2d 276, 279 (Tenn.App. 1977); *Stone v. Hinds,* 541 S.W.2d 598, 600 (Tenn.App.1976); *Poppenheimer v. Bluff City Motor Homes,* 658 S.W.2d 106 (Tenn. App.1983). Summary judgment is to be

rendered by a trial court only when it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn.R.Civ.P. 56.03 (1986).

██ We think that, taken as a whole, Stuart's proof creates a material issue of fact on the standard of acceptable psychiatric practice in similar communities to those found in the Polk, McMinn, and Bradley county area. Although medical malpractice actions impose more rigorous procedural requirements on the plaintiff, once the threshold of proof has been crossed; as it has been here by Plaintiffs' expert Stuart, then the case should proceed to trial on the merits.

Applying the scope of review as set out above, together with this Court's view that summary judgments are generally inappropriate in tort actions, *Bowman v. Henard,* 547 S.W.2d 527 (Tenn.1977), the summary judgment of the trial court is reversed and this cause is remanded for trial on the merits.

Defendants–Appellees raise numerous sub-arguments regarding the evidentiary capacity of Stuart's deposition. Those arguments, however, go to the weight rather than to the admissibility of Stuart's testimony, and should be addressed to the trier of fact, rather than to this Court.

The judgment of the trial court is reversed, and the case is remanded for trial on the merits. Costs of this appeal are taxed to the Defendants–Appellees.

SANDERS, P.J. (E.S.), and GODDARD, J., concur.