# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

JOSEPHINE BROWN, WHITFIELD )
BROWN, and EARLINE CULP, )
                  )
      Plaintiffs/Appellants, )  Shelby Law No. 56341 T.D.
                  )
VS. )  Appeal No. 02A01-9611-CV-00291
                  )
DR. KENNETH KUDSK and )
UT MEDICAL GROUP, INC., )
                  )
      Defendants/Appellees. )

FILED

January 2, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE ROBERT L. CHILDERS, JUDGE

**CURTIS D. JOHNSON, JR.**
**JOHNSON & SETTLE**
Memphis, Tennessee
Attorney for Appellant

**J. KIMBROUGH JOHNSON**
**THOMASON, HENDRIX, HARVEY,**
**JOHNSON & MITCHELL**
Memphis, Tennessee
Attorney for Appellee

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

      This is an appeal from a summary judgment in a medical malpractice case. The trial

court entered an order of summary judgment on behalf of Defendant, Dr. Kenneth Kudsk ("Dr. Kudsk"). Plaintiffs, Josephine Brown ( "Brown"), Whitfield Brown, and Earline Culp, appeal the judgment citing, *inter alia*, errors in the trial court's granting of summary judgment when the Plaintiffs' expert affidavits and deposition testimony were proper responsive proof to the Defendant's motion for summary judgment. For reasons stated herein, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

On September 14, 1992, Brown was admitted to the Regional Medical Center for subtotal thyroidectomy operation. Based on hospital procedure, Brown was admitted to the service of a staff physician. In this case, Brown was admitted and assigned to the service of Dr. Kudsk, a faculty member of the University of Tennessee in the Department of Surgery. Brown was not Dr. Kudsk's private patient.

Dr. Kudsk was the attending physician whereby he trained physicians in their residency programs. Dr. Kudsk was a staff surgeon for the surgery rotation and resident physicians Drs. Allen Butts, Mark McQuaid and Timothy McKneib were in rotation in his surgery service.

On that same day, Dr. Butts, the chief resident who was in his fifth and final year of surgical residency, performed a subtotal thyroidectomy on Brown. Dr. Kudsk was present for the procedure, observed it, and assisted to a certain limited extent. There were no problems or complications noted during the surgery. Thereafter, Brown was taken to the recovery room whereby her progress was to be followed by the hospital personnel and the resident physicians.

When Dr. Kudsk left the hospital on the afternoon of September 14, 1992, he was advised that Brown was in satisfactory condition. His next contact with Brown's condition was when he received a call from Dr. Butts at approximately 10:10 p.m., at which time Dr. Butts advised Dr. Kudsk of the airway obstruction which had been experienced by Brown.

2

A short time later, Dr. Butts called Dr. Kudsk back to inform him that Brown was being taken to surgery for the evacuation of a hematoma. The proof presented in this case by the Plaintiffs' experts indicated that the Plaintiff experienced a slow bleed from the blood vessels which had been cut and ligated during Brown's surgery. This bleeding resulted in the formation of a hematoma. This hematoma impaired Brown's ability to breathe thereby cutting off the supply of oxygen to her brain. An anoxic brain injury resulted which rendered Brown into a present vegetative condition.

Plaintiffs originally filed suit against four resident physicians, Dr. Kudsk, UT Medical Group, Shelby County Health Care corporation, d/b/a the Regional Medical Center at Memphis, and two nurses, Bertha Banks and Rob Halt, and alleged medical malpractice in regard to the health care Brown received from all of the Defendants.

A consent order was entered in this cause, allowing the resident physicians to be dismissed from this lawsuit, and their claims heard before the Tennessee Claims Commission.

Defendant Shelby County Health Care has been dismissed as these parties have resolved all claims between them.

Dr. Kudsk and UT Medical Group filed a motion for summary judgment and asked that they be dismissed from this action. In opposition to this motion, Plaintiffs presented the affidavit and deposition of Dr. Choon Shin ("Dr. Shin"), general surgery expert, and the affidavit and partial deposition of Dr. Bonnie Sorensen ("Dr. Sorensen"), endocrinologist.

A hearing was held before the trial court, who granted the Defendants' motion for summary judgment.

The Plaintiffs appeal the judgment of the trial court and, essentially, present one issue for review: Whether, according to the summary judgment standard enumerated in the decision of Bowman v. Henard, 547 S.W.2d 527 (Tenn. 1977), the countervailing

affidavits and deposition testimony of the resident physicians and plaintiffs' experts are proper responsive proof in opposition to the motion and affidavit of Dr. Kudsk for summary judgment, and a basis upon which to deny that motion for summary judgment.

## LAW AND DISCUSSION

The sole issue on this appeal is whether the trial court erred in granting the Defendants' motion for summary judgment. Tenn. R. Civ. P. 56.03 contains two requirements for granting a summary judgment. First, there must be no genuine issues with regard to the material facts relevant to the claims or defenses embodied in the motion. *Pacific E. Corp. v. Gulf Life Holding Co.*, 902 S.W.2d 946, 952 (Tenn. Ct. App. 1995). Second, the moving party must be entitled to a judgment as a matter of law based on the undisputed facts. *Id.*

In determining whether or not a genuine issue of material fact exists for purposes of summary judgment, courts in this state have indicated that the question should be considered in the same manner as a motion for directed verdict made at the close of the plaintiff's proof, i.e., the trial court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). Then if there is a dispute as to any material fact, or any doubt as to the conclusions to be drawn from that fact, the motion must be denied. *Id.* The court is not to "weigh" the evidence when evaluating a motion for summary judgment. *Id.* This Court must use the same standard in reviewing a trial court's judgment granting summary judgment.

In *Bowman v. Henard*, 547 S.W.2d 527, 531 (Tenn. 1977), the Supreme Court of Tennessee set forth the principles to be followed in considering summary judgment motions in malpractice cases:

> In summary we hold that, in those malpractice actions wherein expert medical testimony is required to establish negligence and proximate cause, affidavits by medical doctors which clearly and completely refute plaintiff's contention afford a proper basis for dismissal of the action on summary judgment, in the absence of proper responsive proof by affidavit or

4

otherwise. In those cases wherein the acts are complained of are within the ken of common layman, the affidavit of medical experts may be considered along with all the other proof, but are not conclusive.

In the final analysis, the rule requires that plaintiffs in malpractice actions come forward within thirty days after the summary judgment motion is served, or within such a reasonable period as the trial court in the exercise of sound discretion will allow, with expert opinion on the issues of negligence and proximate cause to make out a genuine issue of material fact, or face the likelihood of summary judgment in favor of defendants. The exception to the general rule arises in those cases where the acts of alleged negligence are within the knowledge of the ordinary laymen. *Bowman v. Henard, supra; Baldwin v. Knight*, 569 S.W.2d 450 (Tenn. 1978).

The operation of the rule in malpractice cases may at first appear to be harsh, but upon examination it clearly falls within the overall purpose of summary judgments. In *Evco Corporation v. Ross*, 528 S.W.2d 20 (Tenn. 1975), Justice Harbison stated in part:

> The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

Summary judgments are not ordinarily appropriate in negligence actions, but where the question to be determined is one which requires expert proof, and no countervailing affidavits are filed to challenge the expert evidence offered by the moving party, summary judgment may be proper. In short, if the issue is one upon which expert proof is necessary, and the non-moving party cannot produce an expert affidavit to create a factual dispute, summary judgment may be appropriate to preclude the time, expense, and delay involved in the protracted litigation.

T.C.A § 29-26-115 (1980) provides in part:

5

**29-26-115. Claimant's burden in malpractice action-- Expert testimony--Presumption of negligence--Jury instructions.--**(a) In a malpractice action the claimant shall have the burden of proving by evidence as provided by subsection (b):

(1) The recognized standard of acceptable professional practice in the profession and specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Plaintiffs assert that they have carried the burden of proof placed upon them by the statute and that the depositions and affidavits of Drs. Shin and Sorensen establish a genuine issue of material fact. We disagree.

In the instant case, it is undisputed that the surgery on Brown was performed without deviating from the surgical standard of care. It is also undisputed that Brown was in satisfactory condition when Dr. Kudsk left the hospital on the afternoon of September 14, 1992. Dr Shin testified in his deposition that he takes full responsibility for everything the residents do on his patient care. Dr. Shin also testified that the complication which arose could have been prevented if there had been no delay in recognizing post-operative bleeding and airway compression and in taking corrective action. Dr. Shin, however, did not testify that Dr. Kudsk had deviated from the standard of care either as a surgeon or as an attending physician. In fact, when Dr. Shin was asked:

> Question (Defendants' counsel): Okay. And as far as the attending physician is concerned, you are not saying that he deviated from the standard of care; are you?

> Answer (Dr. Shin): No, not saying that.

As a result, Plaintiffs failed in carrying their burden of proving that Dr. Kudsk acted with less than or failed to act with ordinary and reasonable care in accordance with the standard of care for surgeons and attending physicians in teaching hospitals.

Plaintiffs also tendered the deposition and affidavit of Dr. Sorensen in order to

6

overcome Defendants' motion for summary judgment. Dr. Sorensen is not a surgeon; she is an endocrinologist. Although there is no requirement under the statute that an expert witness practice the same specialty as the defendant, the expert witness must be sufficiently familiar with the standard of care of the specialist and be able to give relevant testimony on that subject. *See Cardwell v. Bechtol*, 724 S.W.2d 739, 754 (Tenn. 1987). At oral argument on this cause, Plaintiffs pointed this court to the case of *Ledford v. Moskowitz*, 742 S.W.2d 645 (Tenn. Ct. App. 1987), citing the proposition that there is no requirement within T.C.A. § 29-26-115 (1980) that an expert witness practice the same specialty as the defendant. We have no quarrel with the holdings in this case relied upon by Plaintiffs, but believe that Plaintiffs' reliance on this case is misplaced.

*Ledford* was a malpractice action brought against a psychiatrist whose prescription allegedly caused an adverse reaction in the plaintiff. *Ledford*, 742 S.W.2d at 646. This Court, in reversing summary judgment granted by the trial court, held that the testimony of the neurologist who subsequently treated plaintiff was sufficient to create an issue of material fact as to the standard of care required in the psychiatric practice in the community where the alleged malpractice occurred. *Id.* at 649. The neurologist testified that he was Board certified in neurology and psychiatry and that part of his training in neurology was in psychiatry. *Id.* at 647-48. He also testified that he kept up with the literature and that he was familiar with the standard of care in small towns all over the state of Georgia and, thus, was familiar with the standard of care in Ducktown and Cleveland, Tennessee, "in a broad sense." *Id.* at 648. He testified as to the familiarity with misprescribed medicine, with the restrictions on their use and the necessity for close supervision. *Id.* The court held that these facts "make his testimony 'relevant to this issue in this case.'" *Id.* at 649.

In the above case, although the courts accepted the testimony of a medical expert in another field as competent proof on the standard of care, the expert testified as to his familiarity with the defendant's field of practice and the standard of care required in dealing with the specific acts involved on the part of the defendant physician. In the case at bar, Dr. Sorensen's testimony did not rise to this level. Dr. Sorensen stated that she was not

holding herself out as an expert on the standard of care in surgery or as to the standard of care as it pertains to a surgeon in his or her capacity as an attending physician in a teaching hospital. Dr. Sorensen's testimony comes from the view of an endocrinologist. As an endocrinologist, Dr. Sorensen stated in her affidavit:

> Although I am not a surgeon, a patient who is less than 12 hours post-thyroid surgery and complaining of choking and inability to breathe warrants clinical and laboratory evaluation to rule out post-operative complications such as compression, laryngeal spasm, hypocalcemia, aspira, pulmonary embolus, and cardiac complication. The standard of care was definitely inadequate since there is no documentation of physician examination or clinical assessment. Dr. Kneib and Dr. Butts appeared to both be directly responsible for the inadequate care with the attending physician, Dr. Kudsk, indirectly, but ultimately responsible.

Dr. Sorensen further stated:

> Of additional note, the original thyroidectomy may not have been indicated. Not only was a fine needle biopsy not performed preoperatively to rule out cancer, but the TSH level was elevated so that suppression therapy with Synthroid may have alleviated her dysphagic symptoms to avoid surgical intervention.[1]

Although Dr. Sorensen made these statements concerning the deviation from the standard of care for medical practice in general, we find that her testimony fails to establish a basis for expertise in the field of surgery so as to overcome Dr. Kudsk's motion for summary judgment. In Dr. Sorensen's deposition, she was asked:

> Q. Well, you're not qualified to tell us what the surgical standard of care is, are you?
>
> A. Right.

After a careful examination of the record, we find that at all times Dr. Kudsk was acting in his capacity as Brown's surgical attending physician only and not as her primary physician. His involvement in Brown's evaluations and treatment were minimal and tangential to that of the resident physicians.

In the case at bar, Plaintiffs simply failed to controvert Dr. Kudsk's affidavit testimony that the entirety of his actions in this matter complied with the recognized standard of care

---

[1]We note that Dr. Shin, in his deposition, agreed that surgery was clearly indicated based on the pre-operative assessment and findings of pressure symptoms and a scan showing a cold nodule.

for general surgeons practicing in Memphis, Tennessee, under like or similar circumstances. Plaintiffs' complaint is subject to summary dismissal if Plaintiffs, after being given a reasonable opportunity, have failed to establish an essential element of the case in which Plaintiffs will bear the burden of proof at trial. In this case, Plaintiffs have failed to establish that Dr. Kudsk deviated from the standard of care for a general surgeon and an attending physician in a teaching hospital in Memphis, Tennessee.[2]

Accordingly, the order of the trial court granting summary judgment to the defendant is affirmed and this case remanded for such further proceedings as may be necessary. Costs of appeal are taxed to appellants, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
FARMER, J.

---

[2]We also note that Plaintiffs offered the affidavits and deposition testimonies of the resident physicians, none of which established any deviation from the standard of care by Dr. Kudsk as a general surgeon or as an attending physician.