IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 18, 2002 Session

## CAROLYN STOVALL, ET AL. v. LOIS E. CLARKE, M.D., ET AL.

**Appeal from the Circuit Court for Williamson County**
**No. 97652     Russ Heldman, Judge**

---

**No. M2001-00810-COA-R3-CV - Filed June 20, 2002**

---

This is a medical malpractice case against two physicians which was dismissed on motions for summary judgment upon a finding there were no disputed issues of fact and the defendants were entitled to judgment as a matter of law because the plaintiff's experts were disqualified under the locality rule.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part and Remanded**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J., joined. WILLIAM C. KOCH, JR., J., filed a concurring opinion.

Joseph P. Bednarz, Sr. and Joseph P. Bednarz, Jr., Nashville, Tennessee, attorneys for the appellant, Carolyn Stovall, individually and as wife and personal representative of Gerald Stovall, deceased.

Rose P. Cantrell, Nashville, Tennessee, attorney for appellee, Lois E. Clarke, M.D.

Phillip L. North, Michael F. Jameson and Thomas W. Shumate IV, Nashville, Tennessee, attorneys for appellee, Robert W. McCain, M.D.

### OPINION

### I.

The plaintiff, Carolyn Stovall, alleged that she is the surviving widow of Gerald D. Stovall who died of coronary heart disease which the defendant physicians failed to diagnose and treat.

His primary physician was Dr. Clarke who had treated him for several years. The decedent was a smoker with a history of high cholesterol and a family history of heart disease, of which Dr. Clarke was aware. In 1992 an EKG ordered by Dr. Clarke revealed a possible inferior wall myocardial infarction.

In 1996 the decedent consulted Dr. Clarke to discuss an abnormal EKG result when applying for life insurance. She admitted that the decedent informed her that the insurance examiners found 'something different' on their EKG.

In 1997 the plaintiff alleged that the decedent again consulted Dr. Clarke complaining of shortness of breath and wheezing. Dr. Clarke diagnosed reflux disease. About two weeks later, he again consulted Dr. Clarke for a chest cold and wheezing. An upper respiratory infection was diagnosed. He returned again in two weeks with the same complaints, and he was referred to Dr. Robert McCain for consultation regarding bronchitic symptoms, and to Dr. Douglas York for consult of gastric symptoms. The plaintiff alleged that appropriate diagnostic tests would have readily revealed that her decedent suffered from treatable coronary heart disease.

The decedent was examined on February 28, 1997 by Dr. McCain, a pulmonologist, with complaints of persistent cough and shortness of breath. The plaintiff alleged that Dr. McCain failed to take an adequate history and failed to order appropriate diagnostic tests. The decedent died March 11, 1997 from coronary heart disease.

## II.

The defendant Dr. Clarke denied all allegations of negligence and filed a Motion for Summary Judgment alleging the absence of any genuine issue of material fact, supported by her affidavit, the affidavit of Dr. Summers Chaffin, a statement of material facts, and other materials. Dr. Clarke's affidavit recites the history of her treatment of and advice to the decedent which she avows conformed to the local standard of care.

Dr. Chaffin testified that he had studied the mass of materials in the case, including the pleadings, all medical records, depositions and laboratory reports. He has practiced medicine in Tennessee since 1976, and testified that in his opinion the care and treatment rendered to the decedent by Dr. Clarke complied with the recognized standard of acceptable medical practices in Williamson County, Tennessee, and that no act or omission on the part of Dr. Clarke caused or contributed to the death of Mr. Stovall.

## III.

The defendant Dr. McCain denied all allegations of negligence and filed a Motion for Summary Judgment alleging the absence of any genuine issue of material fact, supported by his affidavit, the affidavit of Dr. Michael T. McCormack, the deposition testimony of Dr. Jack Uhrig and Dr. Ronald Krone, and other materials. Dr. McCain testified that he examined the decedent on one occasion, February 26, 1997, upon a referral by Dr. Clarke. He testified that Mr. Stovall related that he had been in good health until recently when he developed rattling in his chest and a cough. He did not complain of chest pain or relate any history of chest pain. Cardiac and lung evaluation was normal. Dr. McCain's diagnosis was bronchitis aggravated by a history of smoking.

**IV.**

The plaintiff responded to the Motions for Summary Judgment by relying upon the depositional testimony of Drs. Clarke and McCain, Dr. Ronald Krone, Dr. Jack Uhrig and the affidavits of Drs. Uhrig and Krone. Dr. Uhrig was offered as a standard of care expert against both defendants, and Dr. Krone was offered as an expert on the causation issues against Dr. Clarke.

Dr. Uhrig, by deposition, testified that he was a reviewer for the Missouri Patient Care Review Foundation, involved in peer review; that he is experienced in the specialty of coronary heart disease; that he is familiar with the standard of care in Franklin, Tennessee, although he practiced in Marshall, Missouri, which has one hospital staffed by twenty-five physicians; that his specialty is internal medicine; that he reviewed the medical records and health history of Mr. Stovall; and that in his opinion the standard of care in Franklin, Tennessee is the same as in Marshall, Missouri; that he knows nothing about Franklin, Tennessee, and has never been there. His deposition in part:

> . . . Based on my review of the medical records and depositions, it is my opinion that Dr. Lois E. Clarke and Robert W. McCain, M.D. both deviated from the standard of care/standard of acceptable professional practice required of physicians in Franklin, Tennessee or in a similar community in the years 1996 and/or 1997. I have set forth those specific opinions in the Rule 26 disclosures which are being attached as an exhibit to these disclosures. Those opinions that are set forth in the attached Rule 26 disclosures which pertain to Dr. McCain and Dr. Clarke are in fact my opinions and are incorporated into this affidavit by reference. These opinions have been further explained and clarified during my deposition of May 26, 2000. They are still my opinions to a reasonable degree of medical certainty.
>
> That I am familiar with the standard of care and/or the standard of acceptable professional practice required of physicians treating patients like Gerald Dwayne Stovall, that have underlying coronary disease, in Franklin, Tennessee or in similar communities, as it existed in 1996 and 1997.
>
> I have never been to Franklin, Tennessee but I am familiar with the standard of care that is applicable there and in similar communities for the following reasons:
>
>> For the past 18 years I have been seeing patients like Gerald Dwayne Stovall in a small community. A majority of the patients I see have underlying cardiology problems, and other physicians in this community frequently refer patients to me that have cardiology problems. Many of these patients also have concomitant pulmonary disease. I am intricately familiar with the standard of care as it applies to the work-up

of patients with coronary artery disease. I consider Franklin, Tennessee to be a similar community to Marshall, Missouri as it pertains to the facts and circumstances of this case.

Over the past 18 years, I have worked very closely with pulmonologists and cardiologists in the diagnosis and treatment of coronary artery disease. I am very familiar with the standard of care issues that pertain to family practitioners referring to consulting cardiologists and pulmonologists.

I am involved in the Missouri Patient Care Review Foundation as a physician reviewer. For the past 10 years, I have been reviewing medical records of physicians throughout the state of Missouri and have been rendering opinions on appropriate care by physicians throughout the state.

Dr. Krone, by deposition, testified that he was board certified in cardiology and internal medicine, and is a professor of medicine at Washington University School of Medicine in St. Louis. He did not testify as to any standard of care, but confined his opinion to causation. The thrust of his testimony was direct: that by-pass surgery would have prolonged Mr. Stovall's life.

## V.

The Motions for Summary Judgment were granted without elaboration; the plaintiff thereafter filed a Rule 59 Motion to Alter or Amend, supported by three (3) affidavits, including one from Dr. Krone who testified as to the standard of care. The Rule 59 Motion was denied and the plaintiff appeals. The issue is centered on the disqualification of plaintiff's experts because they were not familiar with the standard of care in Williamson County, Tennessee. A secondary issue is whether affidavits submitted in support of the Rule 59 Motion were properly considered.

## VI.

In determining whether or not a genuine issue of material fact exists for purposes of summary judgment, the issue should be considered in the same manner as a motion for directed verdict made at the close of the plaintiff's proof, i.e., the trial court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. **Downen v. Allstate Ins. Co.,** 811 S.W.2d 523, 524 (Tenn. 1991); **Taylor v. Nashville Banner Publishing Co.**, 573 S.W.2d 476, 480 (Tenn. Ct. App. 1978). If there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied. **Poore v. Magnavox Co. of Tennessee**, 666 S.W.2d 48, 49 (Tenn. 1984); ("[I]f the court entertains any doubt whether or not a genuine issue exists as to any material fact it is its duty to overrule the motion."); **Dooley v. Everett**, 805 S.W.2d 380, 383 (Tenn. Ct. App.

1990).  The court is not to "weigh" the evidence when evaluating a motion for summary judgment, **Byrd v. Hall**, 847 S.W.2d 208, 210-11 (Tenn. 1993), because a summary judgment cannot be used as a substitute for a merit trial of disputed factual issues.  **Evco Corp. v. Ross**, 528 S.W.2d 20 (Tenn. 1975).

Tennessee Code Annotated § 29-26-115 provides:
(a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;
(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

# VII.
## The Locality Rule

Many Tennessee cases have addressed the requirement that an expert in a medical malpractice case demonstrate knowledge of the standard of care in the same or similar community. This requirement is commonly referred to as the "locality rule."

There is no requirement that the expert witness be in the same specialty of the medical profession as the defendant.  **Ledford v. Moskowitz**, 742 S.W.2d 645, 647 (Tenn. Ct. App. 1987). However, the expert must be sufficiently familiar with the standard of care of the profession or specialty and be able to give relevant testimony on the issue in question.

In **Mabon v. Jackson-Madison County General Hosp.**, 968 S.W.2d 826 (Tenn. Ct. App. 1997) the issue of an expert's disqualification under the locality rule was squarely posed.  The expert, Dr. Shane, who practiced in Missouri, knew nothing about Jackson, Tennessee, the venue of the alleged tort.  Writing for the court, Judge Crawford opined:

To qualify as an expert, a physician is not required to be familiar with all of the medical statistics of a particular community.  **Ledford v. Moskowitz**, 742 S.W.2d 645, 648 (Tenn. App. 1987).  However, a complete lack of knowledge concerning a community's medical resources would be contrary to knowledge of the required standard of care.  The plaintiff's tendered expert must be familiar with the standard of care in the community in which the defendant practices or in a similar community. Without this requisite threshold evidence of the standard of care in the locality, a plaintiff cannot demonstrate a breach of duty.  *See, Cardwell*, 742 S.W.2d at 754.

Mabon contends that he has met that threshold and that this case is distinguishable from *Ayers* and *Osler* because there was evidence in those cases that the standards of care were different and that there is no proof in this case that the standard of care in Jackson, Tennessee is different from that propounded by Dr. Shane. He argues that once Dr. Shane set forth his opinion that the national standard of care is the same as the standard of care in Jackson, the burden then shifted to Dr. Thomas to set forth a different standard of care for Jackson.

We respectfully disagree with this contention. It is the plaintiff who is charged with the burden of proof as to the standard of care in the community in which the defendant practices or in a similar community. T.C.A. § 29-26-115(a)(1). A plaintiff who chooses to prove the standard of care in a similar community necessarily must prove that community is similar to the one in which the defendant practices. To shift this burden to the defendant directly contradicts the plain language of the statute and would render the statute a nullity. Under the principles of summary judgment, once Dr. Thomas moved for summary judgment and submitted an affidavit stating that he complied with the standard of care in Jackson, the burden then shifted to Mabon to set forth specific facts that Dr. Thomas failed to meet the standard of care in Jackson or a similar community.

In this case, Dr. Shane's deposition testimony leads us to conclude that he is not familiar with the standard of care in Jackson, Tennessee. Moreover, we cannot accept Dr. Shane's bare assertion that the standard of care in Jackson is the same nationwide and that the level of care with which Dr. Shane is familiar *should* have been available in Jackson. This does not comply with the nonmoving party's burden on a motion of summary judgment to set forth specific facts. From our review of the record, Dr. Shane simply failed to establish that he had knowledge of the requisite standard of care in Jackson, Tennessee or in a similar community.

Without evidence as to the standard of care in Jackson or in a similar community, Mabon cannot demonstrate any breach of duty to Mrs. Mabon. *See, Cardwell*, 724 S.W.2d at 754. Mabon therefore failed to carry the burdens placed on him by T.C.A. § 29-26-115. As such, there was no genuine issue of material fact, and Dr. Thomas was entitled to judgment as a matter of law. The trial court correctly granted summary judgment to Dr. Thomas.

**The Rule 59 Motion**

As we have seen, after the Motion for Summary Judgment was granted, the plaintiff filed a Motion to Alter or Amend the Judgment, supported by three additional affidavits, one each from Drs. Tuteur, Krone, and Golusinski.

Dr. Tuteur is a pulmonologist who practices in Missouri. He testified that he had reviewed the geographical data, statistical data, and literature concerning Franklin, Tennessee and Williamson County, and its environs, particularly its proximity to Nashville; that he considered Franklin to be similar to a community where he practiced his specialty, and that he was familiar with the standard

of care that is applicable in this case. He further testified that he was familiar with the standard of care required of pulmonologists' practices in Franklin which is the same as it is in similar counties where he practiced. He opined that Dr. McCain deviated from the standard of care required of pulmonologists practicing in Franklin because:

> He failed to take an appropriately detailed and meaningfully, complete and pertinent history from Gerald Dewayne Stovall. The history that is documented in his medical records is substantively inadequate and is a violation of the standard of care because Dr. McCain did not obtain sufficient historical information in order to develop a differential diagnosis and to derive a proper evaluation and management care plan.
>
> He failed thoroughly and properly to evaluate the potential causes for Gerald Dewayne Stovall's shortness of breath and cough. By his own testimony, Dr. McCain's history and physical examination probably took only 4 or 5 minutes of face to face time. This short encounter time is clearly inadequate in trying to diagnose the causes of shortness of breath and cough for the first time pulmonary consultation visit and thus violates the standard of care.
>
> He failed to document consideration that Mr. Stovall's symptoms may have been caused by cardiac disease. The standard of care required Dr. McCain to consider cardiac, among the other causes, for the shortness of breath.
>
> Dr. McCain has testified that he had a conversation with the family practitioner, Lois Clarke, M.D., and he also had the benefit of Dr. Clarke's medical records, which showed an EKG in 1992 that was equivocal, and certainly had sufficient knowledge available to require him to actively consider that Mr. Stovall's problems may indeed have been caused by an underlying cardiac problem and to collect data sufficient to further evaluate and manage this problem. He clearly violated the standard of care regarding his overall consultation.
>
> It is my opinion that if Dr. McCain had performed a proper differential diagnosis and properly investigated the possible causes for Mr. Stovall's shortness of breath, he would have discovered the simple facts of the history related by Mr. Stovall's wife in her deposition leading to the fact that Mr. Stovall had a cardiac problem
>
> It is also my opinion that the violations of the standard of care referred to above, are causally connected to the death of Gerald Dewayne Stovall, and that it is my opinion to a reasonable degree of medical certainty, that if Robert W. McCain had complied with the standard of care required of him in February of 1997 during his pulmonary consultation, Mr. Stovall's underlying heart condition would have been diagnosed, and he would probably have undergone successful medical and or surgical management of

his heart problem and it is my further opinion, to a reasonable degree of medical certainty, he would be alive today.

Dr. Golusinski testified that he is licensed in Georgia and North Carolina. Like Dr. Teteur, he said that he had reviewed the statistical factors, and that he considered Franklin to b a community similar to several communities where he had practiced medicine, and that he was familiar with the required standard of care in Williamson County. He opined that Dr. Clarke violated the standard of care in regard to the care and treatment of Mr. Stovall in these particulars:

> Specifically, Dr. Clarke violated the standard of care as follows:
> She failed to properly investigate a progressively abnormal EKG in a patient with a history of smoking and elevated lipids.
> She failed to aggressively treat markedly elevated lipids over at least a five year time period, and
> Failed to appropriately investigate, and/or refer to a cardiologist for investigation, symptoms which were highly suggestive of congestive heart failure or left ventricular dysfunction.
> She had a duty to act upon the information that was contained in her medical chart, and either appropriately investigate or refer to a cardiologist for appropriate investigation. She failed to comply with the standard of care required of physicians treating patients like Gerald Dewayne Stovall under the same or similar circumstances.
> It is also my opinion, that the violations of the standard of care referred to above, are causally connected to the death of Gerald Dewayne Stovall, in that it is my opinion, to a reasonable degree of medical certainty, that if Lois E. Clarke, M.D. had complied with the standard of care required of her in 1996 and 1997 in regard to treating Gerald Dewayne Stovall, he would have been diagnosed as having coronary artery disease and he would have probably undergone coronary bypass surgery, and it is my further opinion that to a reasonable degree of medical certainty, he would be alive today. My definition of reasonable degree of medical certainty is more probable than not.

Dr. Krone offered an additional affidavit in regard to the issue of the standard of care required of Dr. Clarke. He testified that he was familiar with the standard of care of family practitioners treating patients like Mr. Stovall in Franklin and similar communities, and that Dr. Clarke deviated from acceptable standards in these particulars:

> Specifically, Dr. Clarke knew that Gerald Dewayne Stovall had an equivocal EKG in 1992. She also knew that Mr. Stovall had a history of smoking and elevated lipids over at least a five year period of time, and she

also know that Gerald Dewayne Stovall had abnormal findings on two EKGs in 1996.

Based on the information that was available to Dr. Clarke, she had a duty to appropriately investigate the signs and symptoms, which were highly suggestive of congestive heart failure or left ventricular dysfunction, or ischemia. In the alternative, she could have fulfilled her duty to investigate by appropriately referring Mr. Stovall to a cardiologist for investigation and evaluation.

To summarize my opinions, Dr. Clarke was clearly on notice that Mr. Stovall may have underlying cardiac problems. She had a duty to investigate and/or refer to a cardiologist. She failed to do so, and therefore, she violated the standard of care that was required of her and all physicians treating patients like Gerald Dewayne Stovall in Franklin, Tennessee or similar communities.

It is also my opinion that the violations of the standard of care referred to above are causally connected to the death of Gerald Dewayne Stovall, in that it is my opinion to a reasonable degree of medical certainty, that if Lois E. Clarke, M.D. had complied with the standard of care required of her in 1996 and 1997, Mr. Stovall's coronary artery disease would have been diagnosed and he would have probably undergone coronary bypass surgery, and it is my further opinion to a reasonable degree of medical certainty, he would be alive today. I have also set forth additional opinions on causation in my previous affidavit and deposition, and I stand by those opinions today.

The Rule 59 Motion was filed on February 26, 2001, to alter or amend the summary judgment entered in favor of Dr. Clarke on January 26, 2001. The essential ground alleged for relief was the assertion that the trial court stated, during argument on the Motion for Summary Judgment, that if summary judgment was granted, the plaintiff would have thirty (30) days to "bring in these new expert opinions and the court would consider them." So far as the record reveals this assertion is not denied.

A similar motion, with a like result, was filed on the same date to alter or amend the summary judgment entered in favor of Dr. McCain.

The defendants' objection to the late-filed affidavits was recognized by the trial court who nevertheless considered them and concluded that nothing asserted therein changed his opinion that summary judgment was proper.

The resolution of a Rule 59.04 Motion is governed by the criteria announced in *Harris v. Chern*, 33 S.W.3d 741 (Tenn. 2000). Although the *Harris* case specifically deals with a motion under Rule 54.02 (reconsideration of an interlocutory order granting summary judgment), and not a Rule 59.04 motion to alter or amend, the Court noted that many of the same considerations

discussed in *Harris* would be applicable when a litigant submits additional evidence as part of a Rule 59.04 motion to alter or amend a summary judgment.

The *Harris* court articulated five factors for consideration by the trial court, as follows:
A.      The movant's efforts to obtain evidence to respond to the motion for summary judgment;
B.      The importance of the newly submitted evidence to the movant's case;
C.      The explanation offered by the movant for its failure to offer the newly submitted evidence in its initial response to the motion for summary judgment;
D.      The likelihood that the non-moving party will suffer unfair prejudice, and
E.      Any other relevant fact.
33S.W.3d at 745

It will be seen that the factor relied upon by the plaintiff is not articulated in *Harris*: the undisputed agreement by the trial judge to consider new affidavits if filed within thirty days after judgment was entered. The trial judge adhered to his agreement and considered the late-filed affidavits, an action with which we are not disposed to take issue in light of the particular circumstances.

The affidavit of Dr. Krone reiterates his opinion that coronary by-pass surgery would have prolonged the life of Mr. Stovall. Dr. Krone declares that he has been furnished statistical data about Franklin, Tennessee and the medical facilities available there. He testified that "I have sufficient information about Franklin, Tennessee, to know that cardiologists and cardiac surgeons were available in the immediate area, and it is my opinion that the standard of care issues and causation issues that apply to the facts and circumstances of this case are the same in the St. Louis area as they are in the Nashville area . . ." Dr. Krone went on to testify that when the standard of care requires a cardiac work-up and/or a referral to a cardiologist and subsequent by-pass surgery, it is the same throughout the community, and "there is nothing about Franklin, Tennessee that would make it an exception, to the general rule."

Dr. Uhrig reiterated that although he had never been to Franklin, he was familiar with the standard of care practiced there because "I consider Franklin, Tennessee, to be a similar community to Marshall, Missouri as it pertains to the facts and circumstances of this case . . . the reality of modern medical practice is that there is a national standard of care that applies in many circumstances . . . the standard of care for treating a patient like Gerald Stovall . . . infers the same or similar circumstances that existed in 1996 and 1997 would be exactly the same throughout all 50 states with the exception of some very primitive areas such as the Appalachian Mountain Regions and similar localities . . ."

He further testified that "I am also familiar with the locality standard by virtue of the fact that I have received over twenty charts from the State of Tennessee in order to render an opinion as to

whether or not malpractice occurred," and that he had testified at trial in three medical malpractice cases in the middle Tennessee area.

*Mabon* is clear on these crucial points: (1) an expert is not required to be familiar with all of the medical statistics of Williamson County; (2) the tendered expert must be familiar with the standard of care in Williamson County, or failing that, in a similar community; (3) the plaintiff has the burden of proving that the standard of care in Marshall, Missouri, or its environs, is similar to the standard of care in Franklin, Tennessee or a similar community; (4) if the motion for summary judgment is supported by evidence that the defendants exercised the requisite standard of care in Franklin, the burden shifts to the plaintiff to 'set forth' specific facts that the defendants failed to exercise the requisite standard of care in Franklin or in a similar community.

We agree that more is required of an expert that the mere statement "I am familiar with the standard of care in Franklin, Tennessee or in a similar community." Such a statement is conclusory. The plaintiff's experts, apparently reacting to their lack of geographical information and medical statistics about Franklin, undertook to apprise themselves of these deficiencies and to acquire knowledge of Franklin and communities similar to their locale.

As to the summary judgment for Dr. Clarke, we think that the testimony of the plaintiff's expert, Dr. Uhrig, sufficiently demonstrated knowledge of the standard of care applicable to a community similar to Franklin. *See, **Ledford v. Moskowitz**,* 742 S.W.2d 645 (Tenn. Ct. App. 1987). The purpose of the locality rule is to ensure that physicians are accorded a fair assessment of their conduct in relation to appropriate community standards. While the evidence of Dr. Uhrig's familiarity with the appropriate standard of care in Franklin is not overpowering it does no violence to the locality rule. We therefore hold that the court erred in granting the Motion for Summary Judgment to Dr. Clarke.

The Motion for Summary Judgment filed by Dr. McCain was properly granted. We deem it unnecessary to address the locality rule as to his motion because adequate grounds independent of the rule exist to maintain the action of the trial court. The plaintiff failed to demonstrate that she will be able to prove that any act or failure to act by Dr. McCain caused her decedent to suffer injuries that otherwise would not have occurred. Tenn. Code Ann. § 29-26-115(a)(3). The affidavit of Dr. Teteur does not explain how Dr. McCain's failure to take a more complete history from the decedent caused him to suffer injuries that would not otherwise have occurred. We conclude that the claim against Dr. McCain fails for lack of causation evidence.

The judgment as to Dr. Clarke is reversed and the case is remanded for trial. The judgment as to Dr. McCain is affirmed. One half of the costs are assessed to the plaintiff, and one half to Dr. Clarke.

_____
WILLIAM H. INMAN, SENIOR JUDGE

-11-