Sharon PULLUM, et al.

v.

Richard L. ROBINETTE.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Jan. 6, 2004 Session.

July 20, 2004.

Wayne L. Robbins, Jr., Mary Taylor Gallagher, A. Scott Derrick and W. Scott Sims, Nashville, Tennessee, for the appellant, Richard L. Robinette, D.M.D.

M. Andrew Hoover, Andrew N. Grams and Mary A. Gabbett, Pulaski, Tennessee, for the appellees, Sharon Pullum and Robert Pullum.

## OPINION
PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and WILLIAM B. CAIN, J., joined.

The plaintiff suffered numbness and partial facial paralysis after a root canal. She subsequently filed a malpractice suit against the dentist who performed the procedure. The defendant filed a motion *in limine* seeking to exclude all testimony by the plaintiff's expert witness on the ground that he did not meet the requirements of Tenn.Code Ann. § 29–26–115. The trial court denied the motion and, after hearing testimony on his qualifications at trial, allowed the expert to testify in front of the jury, which returned a $150,000 verdict for the plaintiff. The defendant argues on appeal that the trial court erred by allowing the expert to testify, and that we should accordingly reverse the verdict and judgment. We do not agree, and we affirm the judgment of the trial court approving the verdict.

On December 5, 1998, Sharon Pullum underwent the extraction of a tooth, performed by Dr. Richard Robinette. On December 17, she returned to Dr. Robinette's Spring Hill, Tennessee dental office with a toothache. Dr. Robinette examined the patient, and determined that a root canal that he had previously performed on Tooth Number 20 needed to be re-done. He performed the procedure on the same day. During the root canal, a file that Dr. Robinette was using broke off and became lodged in Tooth Number 20. He did not inform the patient that he had broken the file, but tried to extract it. After the procedure, Ms. Pullum experienced numbness and pain in her left lower lip and the area around her left lower jaw. The symptoms did not go away.

On June 29, 2001, Ms. Pullum filed a complaint for negligence in the Circuit Court of Maury County.[1] She claimed that in the course of performing the root

canal, Dr. Robinette negligently and permanently damaged her mandibular nerve, and that as a result of the nerve damage, she continues to have difficulties speaking and eating, and that she experiences extreme pain when performing either of those functions. She also claimed that the change to the cosmetic appearance of her face causes her to suffer self-consciousness, mental anguish, and loss of enjoyment of life.

The plaintiff asked to be awarded compensatory and punitive damages for her injuries. Her husband, Robert Pullum, joined in the complaint, asking for damages for loss of consortium. Dr. Robinette filed an answer and denied that he was guilty of any negligence.

## I. Expert Testimony, Trial, and Verdict

Since Ms. Pullum's complaint sounded in malpractice, the specialized evidentiary requirements for such cases came into play, particularly the requirement that the relevant standard of care, its breach, and the causation of the injury be proved through the testimony of an expert witness. *See* Tenn.Code Ann. § 29–26–115. To meet those requirements, the plaintiff retained the services of Dr. Ronald Neer, a recently retired dentist who had practiced for twelve years in the town of La Grange, Missouri.

The central issues in this case arose from the trial court's treatment of two motions *in limine* filed by the defendant. The first motion asked the trial court to totally exclude testimony from Dr. Neer, on the ground that he was not sufficiently familiar with the acceptable standard of professional practice in Spring Hill, Ten-

---

1. Ms. Pullum filed her initial claim within a year of her injury, but voluntarily dismissed it in July of 2000. The present claim was filed

pursuant to the savings statute, Tenn.Code Ann. § 28–1–105.

nessee to meet the requirements of Tenn. Code Ann. § 29–26–115(a)(1).

The second motion asked only for the exclusion of any testimony "of a medical nature" by Dr. Neer, such as testimony as to the cause of Ms. Pullum's injury or its permanency. The rationale for this motion was that since he was a dentist rather than a physician, Dr. Neer was not qualified to render medical opinions or to make medical diagnoses. In an oral ruling, the trial court denied the first motion, but granted the second motion in part and denied it in part, ruling that Dr. Neer could testify about the cause of Ms. Pullum's injuries, but not about their permanence.

The case went to trial before a jury. Dr. Neer testified at length as to his qualifications to testify about the standard of practice in Spring Hill, the ways in which he believed Dr. Robinette had breached that standard of practice, and how those breaches caused Ms. Pullum's injury. At the close of the plaintiff's proof, the defendant renewed his motion to exclude Dr. Neer's testimony and also moved for a directed verdict. The trial court denied the motions, and the defendant went on to present his own proof, including the testimony of his own retained expert, Michael K. Garrett, D.D.S., in order to refute Dr. Neer's testimony.

After a four day trial, the jury found that Dr. Robinette was negligent and that his negligence was the legal cause of Sharon Pullum's injuries. The jury awarded Ms. Pullum $100,000 for past pain and suffering, and $50,000 for past loss of ability to enjoy life. There were no damages awarded for future pain and suffering or for future ability to enjoy life, nor was there any award to Sharon Pullum for punitive damages, or any award of damages to Robert Pullum for loss of consortium.

The trial court subsequently filed a judgment in accordance with the verdict. On the same date, it filed an order memorializing the oral rulings it had previously made in regard to the motions *in limine* filed by the plaintiff and those filed by the defendant. The defendant subsequently filed a motion to have the verdict and judgment set aside. After argument, the trial court denied the motion. This appeal followed.

## II. REQUIREMENTS OF EXPERT TESTIMONY

Dr. Robinette argues that the trial court erred by allowing Dr. Neer to testify because his pre-trial deposition did not reflect that he met the statutory requirements for proof in malpractice cases. Tenn.Code Ann. § 29–26–115 reads in its entirety:

(a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

(b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to

practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection when it determines that the appropriate witnesses otherwise would not be available.

(c) In a malpractice action as described in subsection (a), there shall be no presumption of negligence on the part of the defendant; provided, there shall be a rebuttable presumption that the defendant was negligent where it is shown by the proof that the instrumentality causing injury was in the defendant's (or defendants') exclusive control and that the accident or injury was one which ordinarily doesn't occur in the absence of negligence.

(d) In a malpractice action as described in subsection (a), the jury shall be instructed that the claimant has the burden of proving, by a preponderance of the evidence, the negligence of the defendant. The jury shall be further instructed that injury alone does not raise a presumption of the defendant's negligence.

Dr. Robinette asserts that Dr. Neer's pretrial affidavit and deposition did not establish that he met the statutory requirements in two particulars: (1) the locality rule as set out in Tenn.Code Ann. § 29–26–115(a)(1) [2] and (2) qualification to

testify as to causation. We begin with the locality rule.

### III. The Locality Rule

 The Tennessee Supreme Court has reaffirmed the requirements established in the locality rule and has restated those requirements:

A plaintiff in a malpractice action, therefore, must produce expert medical evidence to establish the standard of professional care in the community in which a defendant practices or in a similar community. A medical expert relied upon by a plaintiff must have knowledge of the standard of professional care in the defendant's applicable community or knowledge of the standard of care in a community that is shown to be similar to the defendant's community. While an expert's discussion of the applicability of a national standard does not require exclusion of the testimony, such evidence may not substitute for evidence that first establishes the requirements of Tenn.Code Ann. § 29–26–115(a)(1).

*Robinson v. LeCorps,* 83 S.W.3d 718, 724 (Tenn.2002).

As the Court stated, reference to a national standard of care does not disqualify a witness under the locality rule unless knowledge of such a national standard supplies the only basis for the expert's claimed knowledge of the local standard. The expert in *Robinson* testified only as to the national standard and did not "relate the basis for his knowledge of the standard of care in Nashville or indicate why the Nashville medical community was similar to, and thus had the same standard of professional care as, the community with which [the expert] was familiar." *Id.* at

---

**2.** It is uncontradicted that Dr. Neer met the requirements of Tenn.Code Ann. § 29–26–115(b). He was licensed to practice dentistry in two states (Missouri and Illinois), one of

which (Missouri) is contiguous to Tennessee, and he was practicing in Missouri at the time of the plaintiff's injury.

725. The Court also acknowledged that "in many instances the national standard would indeed be representative of the local standard...." *Id.* at 724.

The distinction was made even more clear in the Court's analysis in *Stovall v. Clarke,* 113 S.W.3d 715 (Tenn.2003), where the Court found that the proposed expert did not simply rely on a national standard or equate the local standard with a national one. *Id.* at 723. The expert in *Stovall* expressed understanding of the local rule and explained that the he applied the locality standard of care, not a national standard. Based upon this distinction from *Robinson* and on information in the expert's supplemental affidavit reflecting that he had, apparently after his initial affidavit, reviewed statistical information about the medical community in the relevant locality, the Court held the summary judgment granted to the defendant doctor was in error.

Dr. Robinette contends that Dr. Neer did not meet the requirements of the locality rule prior to trial because he did not demonstrate the required knowledge of the standard of acceptable professional practice in Spring Hill or in a similar community in his pre-trial affidavit or his discovery deposition.

It is important to point out that, although the parties' arguments and much of this opinion use general language of a standard of care, such references actually mean the specific standard that is relevant to the type of procedure involved or to the actions or failure to act at issue. To put the arguments and findings in context, some description of Dr. Neer's testimony[3] is needed to make clear the specific stan-

dards that Dr. Neer was required to know and that Dr. Robinette was alleged to have breached.

Dr. Neer testified that Ms. Pullum's symptoms on December 17, 1998 did not indicate the need for re-treatment of the root canal at Tooth Number 20 because they most likely resulted from the failure of the upper and lower teeth to meet correctly after the earlier extraction. He further testified that the standard of care for root canals requires the practitioner to take a working-length x-ray prior to beginning the procedure, because it is the only way to determine precisely how deeply into the canal the dentist can safely probe with instruments. Penetration beyond that depth can bring instruments or filler into contact with gums, bone or nerves, with negative consequences. Since Tooth Number 20 sits right above the mental foramen, an opening in the jaw through which a facial nerve exits, the use of instrumentation beyond the apex of the tooth can damage that nerve.

Dr. Robinette apparently did not take a working-length x-ray of Ms. Pullum's mouth, and Dr. Neer's examination of x-rays taken after the root canal showed that the tooth was filled two or three millimeters beyond the apex of the root. The x-rays also showed the tip of a drill or a file that had broken off into the canal.

Dr. Neer testified that when such a mishap occurs, the standard of care requires the dentist to take an x-ray to determine the best approach to remove it, and to inform the patient immediately, so she can have the option of a referral to an endodontist if she wishes.[4]

---

3. The record before us appropriately does not include the entire trial transcript, but only an excerpt with Dr. Neer's testimony.

4. Dr. Neer testified at trial that Dr. Robinette violated various standards of care in numer-

ous ways while treating Ms. Pullum. He admitted on cross-examination that some of those violations had no impact on the final result, such as failing to take her complete

## IV. PROCEDURAL CONTEXT

Some procedural background is necessary to demonstrate the context in which the trial court was called upon to rule on the motions at issue. By scheduling order, the trial in this case was set to begin December 2, 2002, the Monday after the Thanksgiving holiday that year. On November 21, five business days before the start of the trial, the plaintiffs filed three motions *in limine* regarding evidentiary issues. On November 26, with only two business days remaining before trial, the defendant filed five motions *in limine*, including the two at issue in this appeal regarding the testimony of Dr. Neer. A hearing on all the motions was held November 27, the last business day before the start of the trial.[5]

The first motion regarding the locality rule sought to exclude all testimony from Dr. Neer on the theory that he was incompetent to testify under Tenn.Code Ann. § 29–26–115 because he was not familiar with the acceptable standard of care in Spring Hill, Tennessee, based upon the discovery deposition[6] taken by counsel for Dr. Robinette, and upon Dr. Neer's earlier affidavit. At the hearing on the motion,

Dr. Robinette argued that Dr. Neer based his opinion on a nationwide standard and did not demonstrate a sufficient knowledge of the standard of care in Spring Hill based on its similarity to La Grange, Missouri.

Although much of Dr. Robinette's argument on appeal relates to the sufficiency of Dr. Neer's pretrial statements, the decision in this case is not dependent on the question of whether Dr. Neer's affidavit and deposition established his qualifications under the locality rule. Consequently, we do not need to answer that question. We will, however, point out that in his deposition, Dr. Neer claimed to be familiar with the relevant standard of care because his own community of La Grange, like Spring Hill, was a small city in a rural area, that the closest areas of large population to both were cities approximately equal in size to each other (St. Louis and Nashville), and that both areas had approximately the same number of dentists in proportion to their population.

Although Dr. Neer testified that it was his opinion that there was a nationwide standard of care regarding the procedures at issue, he recognized there could be lo-

---

health history and failing to get her signature on an informed consent form.

**5.** The plaintiffs informed the defendant that Dr. Neer would be their expert witness on December 11, 2001, by answers to interrogatories. Disclosure of experts and their opinions was due under the scheduling order August 1, 2002. Plaintiffs again identified Dr. Neer as their testifying expert by letter dated July 31, 2002, but his opinions and the bases therefor were not disclosed until August 15, 2002. The August 15 date was an agreed extension of the August 1 deadline. According to affidavits of the attorneys in the record, counsel for the defendant notified the plaintiffs she wanted to depose Dr. Neer by letter dated August 29, and the attorneys agreed to an extension of the discovery deadline for that purpose. The deposition of Dr. Neer was

finally taken on November 21, 2002, a short time before the trial was set to begin. Counsel for both parties went to great length to explain they were not assigning blame for the delay.

**6.** The Pullums' attorney notes that the discovery deposition was conducted by Dr. Robinette's attorney, that he himself did not ask any questions, and that Dr. Robinette's attorney did not follow up on some of Dr. Neer's answers with questions that might have revealed that the expert witness possessed greater knowledge of local dental practice than the deposition otherwise indicated. We note that both parties were aware, at the time of the deposition, that the deadline for filing dispositive motions had passed. *See infra note 9.*

cality differences but had no information that would indicate a different standard would apply to Spring Hill or the Nashville area. When asked if he based his knowledge of the applicable standard of care on the existence of a national standard, he stated, "In this case I feel the nationwide standard of care and that of the area are the same, but I'm not broadly just applying the nationwide standard." When asked at the deposition if he claimed that the dental community in La Grange was "reasonably similar" to that in Spring Hill, Dr. Neer stated, "I feel that it is," and gave various reasons for this belief.

It is clear from our review of the transcript of the hearing that the trial judge was thoroughly familiar with Dr. Neer's deposition testimony and well-versed in the law regarding the locality rule. It was also clear from the hearing that plaintiff's counsel fully intended to ensure that Dr. Neer obtain additional information to improve his knowledge of the community of Spring Hill before he was offered as an expert at trial.[7] The trial court even noted that at the close of Dr. Neer's deposition the expert had stated he was going to do some more homework before anyone else questioned him again. The court stated:

> But now if at the trial he can testify about the Spring Hill standard of care, he can meet the 702 requirements. What I think causes you to win or lose on this motion is whether or not he can

come forward with new testimony between his deposition and the trial.

The trial court recognized, as Dr. Robinette's counsel had argued, that excluding Dr. Neer as an expert would likely result in at least a nonsuit or perhaps a dismissal because of the timing of the motions and the trial.[8] The court stated,

> And it occurs to me that that might be a fairly drastic result and you might have to wait until the end of the plaintiffs' proof in chief to see what Dr. Neer says in response to [plaintiffs' counsel's] questions about the locality rule issue.

In response to questions by the trial court, counsel for Dr. Robinette made it clear that the defendant objected to Dr. Neer being allowed to further educate himself about the Spring Hill community and the admissibility of his trial testimony being determined on the basis of that further education. The trial court disagreed and held:

> I think to the extent that the specific locality is factually, as opposed to legally irrelevant—in other words, if his—if you can only do it one way or you can—you do it subject to certain limitations no matter where you are, big city or small, east or west, north or south, and there is in effect a national standard as to the apex nerve and some related issues, then it's my opinion that he can, in the context of what he said in his deposition,

---

7. Plaintiff argued that no motion for summary judgment had been filed, and, consequently, plaintiff was not compelled to supplement Dr. Neer's testimony or to ask questions of Dr. Neer at the *discovery deposition* to establish more fully Dr. Neer's knowledge of Spring Hill or the standard of care applicable to dentistry there. The court observed that had Dr. Robinette filed a motion for summary judgment with supporting expert affidavits, the plaintiff would have been required to come forward with an opposing affidavit from a qualified expert and the plaintiff's lawyer

would have been asking questions at the deposition. A properly supported motion for summary judgment negating an essential element of the plaintiff's claim requires the plaintiff to offer evidence to establish that element, and a plaintiff cannot simply rest on the pleadings. *Staples v. CBL & Assocs. Inc.,* 15 S.W.3d 83, 89 (Tenn.2000).

8. In their brief, the Pullums assert they would have relied on one of Dr. Robinette's experts in the absence of Dr. Neer's testimony.

testify about that, and he can enhance and make himself better prepared to testify about that. I say that—and, therefore, he can testify about some of those things.

I'll have to become more familiar with the cancellation rule,[9] and if I find any inconsistencies in some of the things he's attempting to say or if he gets into areas that may be unique by locality or because there are multiple ways of doing a given procedure, then I may not let him testify about those.

Now, as a little guidance on where I now think I'm coming from on that, if there are two or three companies that make similar but not quite the same products for refilling this root canal area, and, you know, there are those kinds of slight but somewhat immaterial differences or distinctions—I don't mean to say that the defendant could use those types of things to show multiple ways of doing a procedure, but I'm talking about substance over form if there are some hard and fast rules that you can do this, you cannot do that, and he becomes familiar enough with the Spring Hill area to say that it's the same in Spring Hill because it's the same everywhere except maybe in some third world countries where you don't have the equipment or whatever, then I'm probably going to let him testify about

that and it may or may not be a reversible error, Mr. Hoover. It's close.

But I think in fairness to both parties and in fairness to the triers of fact in helping them get as much information as they can to understand this, I'm going to let it come in. But I do think—and, unfortunately, this is going to be a burdensome—probably multiple jury out hearings as we go through his testimony unless he comes in and says I'm not going to say anything different than what I said in the deposition essentially. Then I'm going to be limiting him to things like, you know, there's this nerve there; you stay away from it; you don't go through the apex.

Dr. Neer subsequently educated himself further about the community of Spring Hill[10] and about the standards of dental practice in that area. In particular, he spoke to a Brentwood endodontist, a Fayetteville dentist, and a Pulaski dentist. He gained information about a local peer review group and its standards. He explored the Tennessee Oral Health Sciences Institute website and was able to confirm to his satisfaction that the standards described in the website were substantially the same as those he had to follow in his own practice. For example, he testified that in both La Grange and Spring Hill, the standard of care for root canals was

9. One of the arguments made by counsel for Dr. Robinette was that if Dr. Neer testified as to specific information regarding Spring Hill in response to questions that he had previously answered with "I don't know," the cancellation rule would be triggered.

10. For example, he testified that he had learned that the economy of Spring Hill, like that of La Grange, was based on both agriculture and manufacturing, and that while there were no practicing endodontists in either community, such specialists could be found within about twenty miles. He also revealed that he had previously been qualified as an expert witness in a case in Brownsville, Tennessee. He was able to testify as to the exact mileage between Nashville and Spring Hill, whereas previously he had only a general understanding of the relationship. We tend to agree with Dr. Neer that exact knowledge of some specifics is less important than an understanding of the general practice in the area, e.g. whether referrals to out of town specialists are customarily made. We note that some of the information Dr. Neer obtained in his inquiries relate to the actual practice in Spring Hill as well as the similarity of the communities.

set by endodontists and that those standards were the same as that set out in the Tennessee Oral Health Sciences website. He acknowledged that his further investigations occurred after his deposition. Dr. Neer testified that his post-deposition efforts had reinforced and affirmed his opinion as to the relevant standard of care and breach thereof.

At trial, Dr. Robinette objected to Dr. Neer's testimony by renewing his motion *in limine.* At the close of the plaintiffs' proof, Dr. Robinette moved for a directed verdict on the basis that plaintiffs had failed to establish a claim because the only evidence of a breach of the standard of care came from Dr. Neer, whose opinions were formed without adequate knowledge of the local standard of care. Essentially, the motion was a renewal of the motion *in limine.*

## V. RULING AT TRIAL

■ The trial court admitted Dr. Neer's testimony into evidence based upon Dr. Neer's explanation of his knowledge of the applicable standards of care. In general, questions regarding the admissibility, qualifications, relevancy, and competency of expert testimony are left to the discretion of the trial court. *McDaniel v. CSX Transp., Inc.,* 955 S.W.2d 257, 263–64 (Tenn.1997). Trial courts perform a "gatekeeping" function to insure that proposed expert testimony meets the levels of relevance and reliability established in Tenn. R. Evid. 702 & 703 and, as in this case, under the locality rule or any other specialized requirement.

■ The trial court has broad discretion regarding the admission of expert testimony. *Robinson,* 83 S.W.3d at 725; *State v. Stevens,* 78 S.W.3d 817, 832 (Tenn.2002); *McDaniel,* 955 S.W.2d at 263. Consequently, a trial court's ruling on the admissibility of such evidence may be over-

turned on appeal only if the discretion is exercised arbitrarily or is abused. *Stevens,* 78 S.W.3d at 832; *Seffernick v. St. Thomas Hospital,* 969 S.W.2d 391, 393 (Tenn.1998); *State v. Shuck,* 953 S.W.2d 662, 669 (Tenn.1997). A finding of abuse of discretion is proper when the trial court applied an incorrect legal standard or reached a decision against logic or reasoning that caused an injustice to the party complaining. *Stevens,* 78 S.W.3d at 832; *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn.2001); *Shuck,* 953 S.W.2d at 669.

■ Accordingly, appellate courts will set aside a discretionary decision only where the trial court has misidentified, misconstrued, or misapplied the controlling legal principles, or the decision is contrary to the substantial weight of the evidence. *White v. Vanderbilt Univ.,* 21 S.W.3d 215, 223 (Tenn.Ct.App.1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court, and an appellate court should allow the trial court's exercise of discretion to stand if reasonable judicial minds could differ as to its soundness. *Eldridge,* 42 S.W.3d at 85; *White,* 21 S.W.3d at 223. The trial court herein acted well within its discretion in allowing Dr. Neer to testify based upon his in-court demonstration of his knowledge of the applicable standard of care.

It is important to point out that Dr. Robinette does not challenge Dr. Neer's trial testimony as failing to meet the requirements of the locality rule. Dr. Robinette does not challenge the standard expressed by Dr. Neer and does not assert on appeal that Dr. Neer's trial testimony did not establish his knowledge of the applicable standard. Consequently, there is no question, in terms of the expert testimony that was presented to the jury, of whether Dr. Robinette "receiv[ed] a fair assessment of [his] conduct in relation to

community standards similar to the one in which [he] practiced," which is the purpose of the locality rule. *Robinson*, 83 S.W.3d at 723, quoting *Sutphin v. Platt*, 720 S.W.2d 455, 458 (Tenn.1986).

Dr. Robinette argues that the trial court should have granted his motion *in limine* based upon the affidavit and discovery deposition in the record at that time. He presents two issues regarding the locality rule: (1) whether the trial court improperly denied the motion *in limine*, and (2) whether the expert should have been allowed to testify at trial on the basis of additional information regarding the locality and local standard of care that he obtained after his discovery deposition.

## VI. THE LAW REGARDING MOTIONS *IN LIMINE*

Objections to the admission of evidence are generally made when the evidence is offered. They may, however, be raised earlier, for example by pretrial motions *in limine*. "*In limine*" means "[o]n the threshold; at the beginning; or preliminarily." BLACK'S LAW DICTIONARY 787 (6th ed.1990).[11] Motions that seek to exclude or to obtain a ruling on the admissibility of evidence may be brought at any time before the introduction of the evidence to which they pertain.

■ Although neither federal nor Tennessee procedural rules specifically authorize motions *in limine*, they have long been used and have been recognized as useful in management of cases. The court's authority in Tenn. R. Civ. P. 16 to manage a case through pretrial conferences and orders includes the discretion to rule on evidentiary issues raised in pretrial motions. *See* Advisory Commission Comments (2003) to

Rule 16.02(6) ("pretrial conferences may greatly facilitate the efficient use of juror time by encouraging the pretrial resolution of evidentiary and other issues....").
The United States Supreme Court has acknowledged that federal trial courts may allow motions *in limine* as an exercise of their "inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 463 n. 4, 83 L.Ed.2d 443 (1984).

Federal trial courts are not required to rule on motions *in limine*. *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir.1995) (stating that a motion *in limine* requests guidance that "the court may provide at its discretion.") Some courts may prefer to wait until the attempted introduction of the evidence at trial to better understand the context. *See Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir.1997) (noting that trial judges may choose to defer an evidentiary ruling until trial for proper evaluation of the evidence). A factual context provided by events at trial is often necessary for a reviewing court to effectively rule on such evidentiary questions. *Luce*, 469 U.S. at 41, 105 S.Ct. at 463.

Additionally, a trial judge may issue a preliminary or conditional ruling on the motion *in limine*, subject to change depending on events at trial. In fact, the United States Supreme Court has stated that *in limine* evidentiary rulings "are not binding on the trial judge, and the judge may always change his mind during the course of the trial." *Ohler v. United States*, 529 U.S. 753, 758 n. 3, 120 S.Ct. 1851, 1854 n. 3, 146 L.Ed.2d 826 (2000). *See also Luce*, 469 U.S. at 41–42, 105 S.Ct.

---

**11.** The United States Supreme Court has used the term "in a broad sense to refer to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n. 2, 105 S.Ct. 460, 462 n. 2, 83 L.Ed.2d 443 (1984).

at 463 (holding that an *in limine* ruling is subject to change whether or not proof at trial differs from that proffered because a judge is free in the exercise of sound discretion to alter a previous *in limine* ruling).[12]

However, a more recent amendment to Fed.R.Evid. 103, effective December 1, 2000, states that "once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Fed.R.Evid. 103(a); *see United States v. Gajo*, 290 F.3d 922, 927 (7th Cir.2002); *see also, Wilson v. Williams*, 182 F.3d 562, 565–66 (7th Cir.1999) (en banc) (explaining that a definitive ruling is one that completely and finally decides an issue and does not require further consideration or depend on how the trial proceeds; a conditional ruling requires the satisfaction of a condition before the court can render a definitive ruling, *e.g.*, that a defendant testify before impeaching evidence will be excluded or limited; a tentative ruling is not final because the court needs more information or the admissibility question turns on later developments).

Tennessee courts have applied the same principles espoused in the amended federal rule. Where the record on a pre-trial motion to exclude evidence clearly presents an evidentiary question and where the trial judge has "clearly and definitively ruled," a party need not object again at trial in order to preserve the ruling for appeal. *State v. Brobeck*, 751 S.W.2d 828, 833–34 (Tenn.1988); *Grand-*

*staff v. Hawks*, 36 S.W.3d 482, 488 (Tenn. Ct.App.2000). Thus, Tennessee courts recognize that some rulings on motions *in limine* are final, at least for purposes of appeal, if those rulings are clear and definitive.

Nonetheless, it is also clear that a trial court in Tennessee is not required to rule definitively on a pre-trial motion to exclude evidence. "With a few exceptions, ... the trial court is given broad discretion in the timing of its decisions on the admissibility of evidence." *State v. Caughron*, 855 S.W.2d 526, 541 (Tenn.1993). A trial court may in its discretion refuse to rule on a motion *in limine* to exclude evidence until there is an attempt to present the evidence in the context of trial. *State v. Gibson*, 701 S.W.2d 627, 629 (Tenn.Crim.App.1985) (holding that a trial court may refuse to rule on a motion to limit admission of evidence of a prior criminal conviction prior to the defendant taking the stand); *Hawkins v. State*, 543 S.W.2d 606, 607 (Tenn.Crim.App.1976) (referring to a motion *in limine* to exclude evidence of past conviction as a "premature" motion, stating "[t]he granting of premature motions to exclude evidence at trial addresses itself to the sound discretion of the court," and noting that the evidence at issue was never the subject of testimony at trial.)

State courts may make pre-introduction rulings on evidence that are conditional or provisional in nature, and, where such conditions do not occur at trial, may change an earlier ruling regarding the ad-

---

12. As the Sixth Circuit has stated:

A motion *in limine* is a request for guidance by the court regarding an evidentiary question. The trial court may, within its discretion, provide such guidance by making a preliminary ruling with respect to admissibility. The parties may then consider the court's ruling when formulating their trial strategy. However, we see no reason why the trial court could not change its ruling, for whatever reason, when the evidence is actually offered and objected to at trial. *United States v. Luce*, 713 F.2d 1236, 1239 (6th Circuit 1983), *aff'd.*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).

missibility of the evidence. *See, e.g., State v. Bray,* 669 S.W.2d 684, 687 (Tenn.Crim. App.1983). We know of no authority suggesting a trial court could not change an *in limine* ruling for other reasons in the exercise of sound discretion.

■ An appellate court will not reverse a trial court's decision on the admissibility of evidence, including a ruling on a motion *in limine,* absent clear abuse. *Heath v. Memphis Radiological Prof'l Corp.,* 79 S.W.3d 550 (Tenn.Ct.App.2002). Similarly, an appellate court will not reverse a trial court's exercise of discretion in ruling on an evidentiary motion *in limine* unless the trial court abused the wide discretion given it to handle such motions.

## A. RULING WITHIN COURT'S DISCRETION

■ It is clear that the trial court had the discretion to decline to rule on the motion *in limine* to exclude Dr. Neer's testimony until he was proffered as an expert at trial. It also had the discretion to rule conditionally or offer guidance to the parties, and could have changed its pretrial ruling at trial.

We read the trial court's oral ruling at the hearing as providing guidance to the parties, refusing to exclude Dr. Neer's testimony at that point, and explaining the conditions under which the testimony would be allowed or excluded, depending upon Dr. Neer's trial testimony regarding his knowledge of the applicable standard of care. The trial court's later order denying Dr. Robinette's motion to set aside the judgment and verdict presents an explanation of the ruling on the motion *in limine* that is consistent with this interpretation.

The Court finds that Plaintiffs' expert was entitled to rehabilitate himself after his deposition under the circumstances of this case. The Court exercised its discretion in awaiting the expert's testimony at trial whether to admit such testimony into evidence. The Court is of the opinion that such act was within the permissible discretion of the trial court and that such evidence was properly admitted.

The Court is mindful that Dr. Neer's qualifications were attacked based upon his testimony at a deposition during which Plaintiff was under no duty to elicit proof. The challenge to Dr. Neer's testimony was made in the form of a motion *in limine* rather than a motion for summary judgment. It was within this Court's discretion to permit proof relative to remain open until trial on the issue of Dr. Neer's familiarity with the standard of care for Spring Hill, Tennessee or a similar community. The Court was satisfied that Dr. Neer presented as a competent witness pursuant to all applicable statutes.

This Court believes all discovery requests should be appropriately supplemented by litigants. Prior to direct examination of Plaintiff's expert witness, the Court finds that some supplementation of Plaintiff's discovery should have been made relative to the names of three (3) dentists with whom he communicated with. The Court finds, however, that any failure was harmless as there was no disagreement as to that information enhancing or changing the testimony of Dr. Neer. These procedural safeguards should be viewed in context with and not outweigh the substantive rights of this injured Plaintiff.

\* \* \* \*

This Court is obligated under *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) and *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) to perform gate keeping functions governing the reliabil-

ity of the expert testimony of Dr. Neer. The Court allowed proof in this matter to remain open until Dr. Neer was examined by both parties at trial in order to fulfill the duties mandated by the *Kumho Tire* and *Daubert* decisions. The Court is confident that the testimony of Dr. Neer was based upon reliable factors.

The trial court clearly acted within its discretion. It reserved final ruling on the admission of Dr. Neer's testimony until examination and cross-examination of his knowledge of the relevant standard of care. The trial court's ruling was a reasonable response to the situation and to the proof offered. Dr. Neer's pre-trial affidavits and deposition contained enough information about the standard of care in the community in which he practiced, and the similarity of that community to Spring Hill, to indicate that his testimony would meet the requirements of the locality rule.[13]

The judge accordingly ruled that the witness could testify at trial, subject to the possibility that his testimony could ultimately be excluded from jury consideration for various reasons related to the locality rule. Since the effect of the expert's testimony was to confirm the similarities between La Grange and Spring Hill and between the standard of care applicable in both, the judge allowed his testimony as to the defendant's conduct to go to the jury.

In *Robinson*, the defendant doctor had objected at both a discovery deposition and

an **evidentiary** deposition to the proposed expert's failure to establish his knowledge of the local standard of care. Despite this notice of the objections, plaintiff did not seek to clarify or supplement the expert's testimony before the trial court granted the defendant's motion *in limine* to exclude the expert's evidentiary deposition. After that ruling, the defendant moved for dismissal of the complaint because the plaintiff had no other medical expert. In response, the plaintiff asked that his proposed expert be allowed to testify at trial to establish his knowledge of the local standard of care. The trial court ultimately granted the motion to dismiss.

In the context of these facts, the Supreme Court agreed with the Court of Appeals that the trial court did not err in refusing to allow the expert to testify and in dismissing the action, basing its decision on the rule that

> it is "within the discretion of the trial judge to decide whether to reopen the proof for further evidence, and the decision of the trial judge ... will not be set aside unless there is a showing that an injustice has been done." *Simpson v. Frontier Cmty. Credit Union,* 810 S.W.2d 147, 149 (Tenn.1991) (quoting *Higgins v. Steide,* 47 Tenn.App. 42, 335 S.W.2d 533 (1959)).

*Robinson,* 83 S.W.3d at 725.

Thus, contrary to Dr. Robinette's assertions, *Robinson* does not mandate a holding that the motion *in limine* should have been granted and Dr. Neer prevented

---

**13.** This court has stated that an expert is not required to be familiar with all the medical statistics of a particular community in order to qualify as an expert in a medical malpractice action. *Ledford v. Moskowitz,* 742 S.W.2d 645 (Tenn.Ct.App.1987). Even in his pretrial statements, Dr. Neer expressed an understanding of the locality rule viź a viź a nationwide standard and demonstrated some under-

lying basis for his familiarity with the local standard. *See Stovall,* 113 S.W.3d at 723. Regardless of whether or not an expert uses the "magic words" implicit in the statute, the court's role is to determine whether the expert's opinion is based on trustworthy information. *Church v. Perales,* 39 S.W.3d 149, 167 (Tenn.Ct.App.2000).

from testifying. To the contrary, it reaffirms the discretion given the trial court in such situations.

We conclude that the trial court acted within its discretion, and there was no error in the trial court's denial of the motion *in limine* pending the offer of Dr. Neer as an expert at trial.

## B. FAIRNESS

 Dr. Robinette's real complaint is not so much with the denial of the motion *in limine* itself, but rather is with the effect of that denial—the opportunity for the witness to improve his knowledge of the local community and the standard there. He complains that by postponing a definitive ruling on the motion until the court was able to "see what Dr. Neer says in response to Mr. Hoover's questions about the locality rule issues ...," the trial judge gave Dr. Neer the opportunity to supplement his knowledge of Spring Hill, while limiting the defendant's ability to effectively cross-examine him on that newly acquired knowledge. According to Dr. Robinette, this procedure thwarted the purposes of discovery and eviscerated the motion *in limine* process.

We begin by noting that the motion *in limine* process inherently allows a trial judge to do exactly what the judge herein did. The plaintiffs were required to present at trial an expert who met all the requirements of Tenn.Code Ann. § 29–26–115. A motion *in limine* filed two days before trial and heard the next day was the first notice the plaintiffs got that the defendant was challenging their expert's qualifications, thus depriving them of any

opportunity to clarify or supplement the expert's discovery deposition regarding the basis of his knowledge of the applicable standard of care. Consequently, we cannot conclude that the judge's ruling was in any way inconsistent with motion *in limine* practice or was unfair.

It is not uncommon for experts whose qualifications are challenged to present additional or supplemental testimony (by affidavit, deposition, or at trial) regarding those qualifications. We know of no rule prohibiting this practice and no authority holding that such supplemental testimony cannot be based on information acquired after the initial pretrial testimony.

Instructive on this issue, for example, is the holding in *Wilson v. Patterson,* 73 S.W.3d 95 (Tenn.Ct.App.2001), wherein a Lexington, Kentucky gynecologist submitted an affidavit stating that the defendant doctor, who practiced in Memphis, had breached the applicable standard of care for the procedure involved. Defendant filed a motion for summary judgment based on the expert's failure to meet the locality rule. In opposition to the motion, the plaintiff submitted another affidavit from the expert expanding on the basis for his knowledge of the applicable standard of care. In granting the defendant's motion, the trial court struck the Kentucky doctor's testimony, because, the court found, the witness had asserted in his first affidavit the existence of a national standard of care for laparoscopic procedures and he admitted that he had never been to Memphis other than to testify in medical malpractice trials.[14]

14. The defendant in *Wilson,* like the defendant in the case before us, argued that the expert's statements in the two affidavits were inconsistent, canceling each other out, and that the "cancellation rule" required that all his testimony be discredited. As the Court in *Wilson* held, the applicable law is that contra-

dictory statements by the same witness regarding a single fact cancel each other out, making those statements "no evidence" of the fact sought to be proved. *Church v. Perales,* 39 S.W.3d at 169. In *Wilson,* this court held that the expert's two affidavits were not contradictory and there was no conflict in the

This court reversed the trial court, noting (1) that in the original affidavit the expert had stated that the standard of care in Memphis was similar to that of Lexington where he practiced and (2) that in the subsequent affidavit the expert had set out additional reasons for his opinion that Lexington and Memphis are similar communities with regard to the standard of care. For example, in the second affidavit, the doctor noted that both cities are regional medical centers and are the locations of their state medical schools. He also stated that as a consequence of testifying in malpractice cases in Memphis, he had obtained enough familiarity with the standard of care for laparoscopies to confirm his belief that the standards were the same. Consequently, this court determined that the expert's testimony in the supplemental affidavit sufficiently established the basis for his knowledge of the local standard of care and reversed the trial court's grant of summary judgment to the defendant. *Id.* at 105–106.

Similarly, in *Robinson,* where the expert's **evidentiary** deposition did not meet the locality rule requirements, the Supreme Court listed, as one of the factors leading to its conclusion that the trial court properly refused to re-open proof by allowing the expert to testify at trial, that in his request to allow the proposed expert to testify, the plaintiff had made no showing of "how [the expert's] new testimony would

differ or clarify the standard of professional care in accordance with statutory requirements." *Robinson,* 83 S.W.3d at 725.

Our Supreme Court has made it clear that parties may supplement evidence offered in support of or in opposition to motions for summary judgment. In particular, a party may supplement information regarding the qualifications of an expert in a medical malpractice case. *Stovall,* 113 S.W.3d at 723. In that case, one of plaintiff's experts supplemented his affidavit regarding the basis for his knowledge of the applicable standard of care in response to defendant's motion for summary judgment. The Supreme Court held that the supplemental affidavit was properly considered because it was filed in response to the motion before the trial court's ruling.[15] *See also Wilson,* 73 S.W.3d at 104 (holding the supplemental affidavit should have been considered). We find that allowing supplemental testimony at trial regarding Dr. Neer's knowledge of the applicable standard of care was consistent with these rulings.

In *Stovall,* it appears the expert may have acquired additional information about the local medical community after his initial affidavit. *See Stovall,* 113 S.W.3d at 723 (the expert "stated in his supplemental affidavit that he had reviewed statistical information about the medical community

statements regarding the applicable standard of care. *Wilson,* 73 S.W.3d at 104. In the first affidavit, the expert stated that the standard of care in Memphis would be similar to that in Lexington; in the second, he enumerated the similarities in the two communities "to substantiate his familiarity with his the standard of care in Memphis." *Id.* The pretrial deposition herein includes Dr. Neer's statement that he believed that La Grange and Spring Hill were similar and that the standard of care for a root canal and other relevant procedures would be the same in the two communities. Any trial testimony regarding

those similarities would not be inconsistent with his earlier statements. We find the cancellation rule argument to be without merit.

15. The defendant had objected to consideration of the supplemental affidavit as untimely filed. In the case before us, the timing of the motion and hearing precluded a supplemental response from the expert in time for the hearing. The court, in effect, allowed the clarification or supplementation before ruling on the expert's qualification.

..."). In fact, the defendant doctor contended the trial court should not have considered the supplemental affidavit in part because the statements therein were based on information provided several years after the alleged malpractice. The Supreme Court found these arguments merely contested the weight of the expert's testimony. *Id.*

Additionally, even a grant or partial grant of summary judgment based upon insufficiencies in medical expert pre-judgment testimony can be set aside pursuant to a motion to alter or amend accompanied by additional evidence. *Id.* at 721. Such motions require the trial court to consider specific factors: the moving party's effort to obtain the evidence in responding to the summary judgment; the importance of the new evidence to the moving party's case; the moving party's explanation for failing to offer the evidence in responding to the summary judgment; the unfair prejudice to the non-moving party; and any other relevant consideration. *Id.; Harris v. Chern*, 33 S.W.3d 741, 744 (Tenn.2000).

We do not believe that the defendant was prejudiced by Dr. Neer's efforts to improve his understanding of dental practice in Spring Hill. He did not change his belief that Spring Hill was similar to La Grange for the purposes of the applicable standard of care but simply found additional evidence of that similarity. There was nothing to prevent Dr. Robinette from coming forward with evidence that the communities were dissimilar or the standard of care different.

Significantly, Dr. Robinette does not argue that Dr. Neer was incorrect in his opinion as to the applicable standards of care. Dr. Neer's testimony about those standards did not change. Consequently, Dr. Robinette cannot claim that any alleged deficiency in Dr. Neer's knowledge of Spring Hill or dental practices there at

the time of his affidavit and deposition led him to an incorrect conclusion as to the applicable standards. The purpose of the locality rule is to ensure that Tennessee doctors are held to the appropriate standards. That purpose was served in this case. The *in limine* rulings of the trial court caused no injustice to Dr. Robinette.

We affirm the trial court's decision to reserve ruling on the expert's compliance with locality rule until he was offered as a witness at trial where his knowledge of the applicable standard was established.

## VII. The Question of Causation

■ Dr. Robinette correctly notes that the malpractice statute provides that "injury alone does not raise a presumption of a the defendant's negligence." Tenn.Code Ann. § 29–26–115(d). Thus, the burden rests on the plaintiff to prove that the defendant's negligent acts were the proximate cause of her injuries. This burden must be carried through expert testimony that, as a result of the defendant's negligence, the plaintiff more likely than not suffered injuries which would not otherwise have occurred. Tenn.Code Ann. § 29–26–115(a)(3); *Church v. Perales*, 39 S.W.3d at 166.

Dr. Neer testified that in his opinion, the injury to the nerve was due to physical trauma, which occurred when Dr. Robinette's instrument made contact with the patient's facial nerve. He testified that as part of his dental training, he had to become familiar with the nerves of the head and neck, and the ways in which faulty instrumentation can cause nerve damage. Under cross-examination, he admitted that he was not an expert in the area of facial numbness or paralysis, and that the question of the permanence of nerve injuries

was beyond his area of expertise.[16]

On appeal, Dr. Robinette argues that all of Dr. Neer's testimony as to causation should have been excluded because, as a dentist, Dr. Neer was not qualified to testify that any negligence by Dr. Robinette was the cause of Ms. Pullum's injuries. He contends that causation in this case was not within Dr. Neer's expertise and that only a neurologist or a neurosurgeon should be considered qualified to testify about a nerve injury.

The statutory test for expert testimony as to any of the elements required to recover for health care malpractice is whether the expert is licensed to practice and has practiced "a profession or specialty which would make the person's expert testimony relevant to the issues in the case." Tenn.Code Ann. § 29–16–115(a)(3). *Ledford*, 742 S.W.2d at 647.

Disputes over this requirement, and the cases resolving those disputes, have most often involved qualification to establish the standard of care and centered on the specialty involved. For example, in *Cardwell v. Bechtol*, 724 S.W.2d 739, 754 (Tenn. 1987), the Court held that, although there is no requirement that the expert practice in the same specialty, the witness must be sufficiently familiar with the standard of the profession or specialty to be able to give relevant testimony. In that case, an orthopedic specialist admitted he was not familiar with the practice and types of treatment administered by osteopaths such as the defendant. While a neurologist attempted to testify as to the osteopath's standard of care in two areas, he also

conceded he had no training in the field and was unfamiliar with the standard of care of the profession of osteopathy. Consequently, neither expert could render a relevant opinion on standard of care. *Id.* at 752; *see also, e.g., Searle v. Bryant*, 713 S.W.2d 62 (Tenn.1986) (finding an infectious disease specialist/clinical microbiologist was qualified to testify about the standards of care applicable to surgeons for the preventions and treatment of surgical wound infections because his training and specific practice or experience made his testimony relevant to those issues); *Ledford*, 742 S.W.2d at 647–48 (holding in an action against a psychiatrist that a neurologist who was also board certified in psychiatry was competent to testify as to the standard of care because his testimony regarding his training and specific experience made his testimony relevant to the issues).

The issue here, however, is not standard of care; it is causation. Dr. Robinette's argument is that Dr. Neer's training and experience as a dentist do not qualify him to testify as to the cause of nerve damage. He asserts this is a medical (presumably, as opposed to a dental) question.

Courts have in some cases held that certain professions are not qualified to render medical opinions. Several of those cases have held that the testimony of nurses, who are prohibited by statute from making medical diagnoses, could not establish medical causation. *See Richberger v. The West Clinic, P.C.*, 152 S.W.3d 505 (Tenn.Ct.App. 2004) (no Tenn. R.App. P.

---

**16.** Dr. Neer's competence to testify as to causation and prognosis was the subject of another motion *in limine*. The trial court ruled that Dr. Neer, based on his own testimony, was not competent to testify as to the permanence of the injury, but was competent to testify as to causation. The court stated, "I think dentists receive training about nerves.

Obviously, that's what the root canal is all about is working with nerves … even if the doctor cannot explain about nerve conduction to the brain and back, I think he can testify about what caused something." Dr. Robinette does not really challenge the *in limine* ruling in this appeal, but rather challenges the in court testimony of Dr. Neer.

11 application filed) (discussing previous cases involving causation testimony by nurses).

Dr. Robinette relies primarily on *American Enka v. Sutton*, 216 Tenn. 228, 391 S.W.2d 643 (1965), a workers' compensation case. The question in that case was whether the testimony of the injured worker and an optometrist were "of sufficient probative value to establish a causal connection between the accident [acid was splashed in the worker's eye] and the loss of eyesight" in contradiction to the testimony of an ophthalmologist who testified there could be no possible connection between the accident and the specific neuritic condition of the worker. *Id.* at 645. The court answered the question negatively and found that the optometrist's testimony could not be considered material evidence on the issue. That conclusion was based upon the fact that the optometrist's training was in the field of measuring vision and fitting lenses. His training and profession did not qualify him as a medical expert in diseases of the eye. That deficiency was relevant because the ophthalmologist, who was trained in the treatment of diseases of the eye, had testified that the worker's loss of sight was due to optic neuritis, an inflammation of the optic nerve.

We do not agree that Dr. Neer's testimony as to causation should have been excluded. It appears to us that by training and experience, Dr. Neer is qualified to testify as to the types of nerve damage that can result from negligently performed dental procedures. Dr. Neer testified that learning about the nerves in the face and head was part of his dental training. He stated, "We're taught where the nerves are, where they exit, what anatomical structures are in the area, what procedures are likely to damage nerves, and we're taught how to take the necessary precautions not to do that." He exhibited his knowledge of how nerves function and how anesthesia, administered by dentists, affects that functioning. While a dentist such as Dr. Neer may not be able to explain precisely why a nerve probed by an instrument is damaged, he was competent to testify that such damage occurs. Any deficiencies in his knowledge of the scientific basis for the working of nerves go to the weight of his testimony. We find Dr. Neer's testimony on causation sufficient to establish that element.

## CONCLUSION

The judgment of the trial court is affirmed. We remand this case to the Circuit Court of Maury County for any further proceedings that may be necessary. The costs on appeal are taxed to the appellant, Dr. Richard Robinette.