IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 3, 2009 Session

SARAH ELIZABETH PLUNKETT, ET AL. v. BRADLEY-POLK, OB/GYN
SERVICES, P.C., ET AL.

Appeal from the Circuit Court for Bradley County
No. V-04-1071     Ginger Wilson Buchanan, Judge

No. E2008-00774-COA-R3-CV  - FILED SEPTEMBER 30, 2009

This is a medical malpractice action filed by Sarah Elizabeth Plunkett and her husband Robert
Plunkett ("the Plaintiffs") as the natural parents and next of kin of their stillborn child.  The
complaint alleges that Michelle Perry, M.D., and Bradley-Polk OB/GYN Services, P.C. (collectively
"the Bradley-Polk Defendants"), negligently failed to diagnose, manage and treat complications
during Sarah's pregnancy and that those failures resulted in the stillbirth delivery of the Plaintiffs'
infant.  The Plaintiffs secured only one medical expert, Michael A. Ross, M.D., to present testimony
that the Bradley-Polk Defendants violated the standard of care applicable in Bradley County at the
time of treatment in early 2004.  Doctor Ross was licensed in Virginia and practiced primarily in
Fairfax, Virginia, and the metropolitan area of Washington, D.C.  To satisfy the "locality rule"
followed in Tennessee, Dr. Ross testified that Bradley County was similar to two communities where
he practiced in Virginia, both of which are within the metropolitan area of Washington, D.C., but
both of which are distinct communities situated about 40 to 50 miles from Washington, D.C.  The
Bradley-Polk Defendants first challenged Dr. Ross's qualifications to testify with a motion in limine,
and the trial court denied the motion approximately one month before trial.  The Bradley-Polk
Defendants renewed their challenge to Dr. Ross's qualifications on the first day of trial.  The trial
court allowed a voir dire of Dr. Ross out of the presence of the jury and held that Dr. Ross was not
qualified because the large metropolitan area where he practiced was not similar to Bradley County.
Upon a stipulation of the parties that there was no proof available other than through Dr. Ross to
establish a violation of the standard of care in Bradley County, the trial court denied the Plaintiffs'
oral motion for continuance and granted the Bradley-Polk Defendants' motion for directed verdict.
The Plaintiffs appeal.  We vacate the judgment of the trial court and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Vacated; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J.,
and D. MICHAEL SWINEY, J., joined.

Kevin R. Dean, Mt. Pleasant, South Carolina, and Jeffrey D. Boehm, Chattanooga, Tennessee, for
the appellants, Sarah Elizabeth Plunkett and Robert Plunkett.

F. Laurens Brock, Alix C. Michel, and Jill Jensen Thrash, Chattanooga, Tennessee, for the appellees, Bradley-Polk, OB/GYN Services, P.C., and Michelle Y. Perry, M.D.

**OPINION**

I.

A.

Sarah Plunkett began to experience problems with her pregnancy at about 18 or 19 weeks gestation, including swelling, high blood pressure and headaches. She was seen and followed during her pregnancy by the Bradley-Polk Defendants. At 31 weeks Mrs. Plunkett started cramping, at which point the Plaintiffs reported to Bradley Memorial Hospital. She was evaluated and released.

Approximately eight weeks later, on January 1, 2004, Mrs. Plunkett again reported to Bradley Memorial because she could not feel the baby move. She was admitted to labor and delivery and hooked up to the customary monitors and sensors. At the time of the admission, defendant Dr. Perry was the person on call for the defendant Bradley-Polk OB/GYN Services, P.C., with Bradley Memorial. Dr. Perry was called. Dr. Perry discharged Mrs. Plunkett with instructions to take Tylenol and rest. Later the same day, the cramping and pain worsened to the point the Plaintiffs called Bradley Memorial several times and even started driving to the hospital but were instructed to return home and rest. Another call that same evening to report worsening pain resulted in instructions to stay home and rest. Plaintiffs called the hospital again about midnight on January 1 and were told Mrs. Plunkett should take Tylenol and a warm bath. Mrs. Plunkett complied but began to bleed after the bath. The Plaintiffs rushed to the hospital. Dr. Perry performed an ultrasound at 4:23 a.m. on January 2, 2004. The ultrasound showed no fetal heart activity. The baby was delivered stillborn on January 3, 2004.

B.

In late 2004, the Plaintiffs filed their complaint against the Bradley-Polk Defendants, naming also Bradley Memorial and two registered nurses employed by Bradley Memorial (collectively "the Bradley Defendants") as additional defendants. A scheduling order established discovery and dispositive motion deadlines in late 2007. The Plaintiffs disclosed Dr. Ross as their only expert against the Bradley-Polk Defendants. Dr. Ross and a registered nurse were both identified as experts against the Bradley Defendants. After taking Dr. Ross's deposition, the Bradley-Polk Defendants filed a motion in limine to exclude Dr. Ross on the basis of the "locality rule" set forth in Tenn. Code Ann. § 29-26-115 (a)(1) (Supp. 2008). The Bradley Defendants filed a motion for summary judgment on the same basis. The trial court, Chancellor Sharon Bell sitting by designation after a vacancy created by the resignation of Judge John Hagler, heard argument on both motions on February 19, 2008. Before the court at the time it heard these motions were an original and supplemental affidavit of Dr. Ross, with his current curriculum vitae, and excerpts of his deposition testimony. Collectively, they reveal the following concerning Dr. Ross's qualifications:

Since 1975 he has been continuously licensed in Virginia and Washington D.C. He has been board-certified in obstetrics and gynecology since 1981. He has never been licensed in Tennessee and has never practiced medicine in the Cleveland or Bradley County communities. To familiarize himself with those communities, he has reviewed information about Cleveland and Bradley County. He is aware that:

> Bradley Memorial Hospital is a 251-bed hospital with approximately 16 registered nurses and a total nursing staff of approximately 208. Bradley Memorial Hospital is accredited by the JCAHO. . . . Bradley Memorial Hospital is equipped to and regularly provides obstetrical services.

Dr. Ross reviewed the following materials to familiarize himself with this case and the Bradley County medical community:

> a)  Records from Bradley Memorial Hospital for [Sarah Plunkett];
> b)  Records from Bradley Polk OB-Gyn Services, Inc.;
> c)  Deposition transcripts of Mr. and Mrs. Plunkett, Dr. Michelle Perry, [and others];
> d) U.S. Census Bureau, Profile of General Demographic Characteristics for Bradley County, Tennessee (2000);
> e)  Economic Report from the Cleveland, Tennessee Chamber of Commerce (2000, 2006);
> f)  Map of Bradley County, Tennessee hospitals and surrounding communities provided by American Hospital Directory . . .;
> g)  Archived website pages for Bradley County Memorial Hospital from August 1, 2003 to June 6, 2004;
> h)  Bradley Memorial Hospital publication "Pulse" (August 2003);
> i)  Bradley Memorial Hospital Vision Statement (2004).

Dr. Ross has been a clinical professor of obstetrics and gynecology at George Washington University Medical Center since 1979. The vast majority of his practice has been as a private physician who has admitted and cared for his patients at a large hospital in Fairfax Virginia. The Fairfax community is not readily comparable to Cleveland or Bradley County because of the difference in size. However, during the 2002-2004 time frame, Dr. Ross also practiced at Reston Hospital in McLean, Virginia, which is in the community where he lives, and in Warren County, which is about 40-50 miles away. Dr. Ross testified that McLean is similar in population to Cleveland and similar in the number of practicing physicians and obstetricians. He also testified that the two communities are similar in that they are both within 40 to 50 miles of a major metropolitan area – Cleveland to Chattanooga and McLean to Washington D.C. In Warren County Dr. Ross was the ad hoc chairman of Warren Memorial Hospital in Fort Royal, Virginia. He was asked to serve and report directly to the administration of the hospital because a dispute had arisen between the acting chairman and other doctors who practiced obstetrics and gynecology. He did not deliver babies in Warren County, but he did actively review records of obstetric patients to be sure that the dispute did not affect the quality of care provided to the patients. According to Dr. Ross,

> [t]hat hospital probably was the closest to Bradley Memorial in terms
> of number of doctors, the level of care based on my reviewing of the
> records, and the size of the county . . . . I think the town has
> about . . . 35 to 40,000 people in it and the county has about 100, 100
> and a quarter in it and so very, very similar to Bradley County.

Dr. Ross testified that Warren Memorial is a Level I hospital with about 100 to 200 beds and three to four doctors that practice obstetrics.

Chancellor Bell denied both the Bradley-Polk Defendants' motion in limine and the Bradley Defendants' motion for summary judgment stating "the Court cannot say as a matter of law that the witnesses Collins and Ross are disqualified to give expert testimony in this case." Between the time of the motion hearing and trial, the Bradley Defendants were dismissed from the case. The matter came on for jury trial on March 19, 2008, against only the Bradley-Polk Defendants with a different judge, Judge Ginger Wilson Buchanan, presiding. After opening statements, the Bradley-Polk Defendants orally renewed their motion to exclude Dr. Ross, arguing that Dr. Ross had not had any experience in a community similar to Bradley County. Specifically, the Bradley-Polk Defendants argued that the Fairfax Virginia community with a population of one million was different from Bradley County with a population of 140,000. The court allowed voir dire examination of Dr. Ross and heard argument concerning his qualifications.

Dr. Ross's C.V. and his two affidavits were made exhibits to his testimony. Essentially Dr. Ross testified consistent with his affidavits and deposition as referenced above with some clarification. His "main practice" has been at INOVA Fairfax hospital which is much larger than Bradley Memorial and in fact is one of the largest in the United States considering the number of births. In making the comparison to Bradley County, Dr. Ross testified that he considered other hospitals as follows:

> The other hospitals were Reston Hospital, which is the next county
> out, which is a smaller community hospital that had, at that time, in
> the two-hundred to two-hundred-fifty-bed range, had a small nursery.
> I practiced there mostly on weekends. The group I covered with
> occasionally admit patients out there, and so then I would go to that
> hospital.
>
> In addition, I referenced a hospital in Warren County, Virginia, which
> is a county approximately fifty miles west of me, where I was asked
> by the medical staff, because of a dispute there, to come in and
> basically be an ad hoc chairman for a period of about eighteen months
> to two years. . . . That was back in 2002, 2004.
>
> They had two to four obstetrician/gynecologists at that time, as I
> remember; and they wanted someone to come in and oversee some
> disputes and to ensure that the quality of care delivered there was

-4-

adequate. And that was a strict Level I hospital, with a hundred to a hundred and fifty beds . . . but it was a small community hospital.

\* \* \*

. . . [T]he first thing they did when I went there was send . . . and give me, when I was out there, a pile of about ten charts to review to see if things were working well there and if there were any problems with the care being delivered [in reference to OB/GYNs].

Dr. Ross identified literature he consulted and websites he visited to learn about Cleveland and Bradley County and testified that the comparison was favorable and the communities were similar to McLean, Virginia and Warren County, Point Royal, Virginia. On cross-examination, Dr. Ross admitted that he had never delivered babies in Warren County and that he had previously testified that he had never practiced outside the Washington Metropolitan area, which included Fairfax. On redirect, Dr. Ross testified that although the smaller communities are within the greater metropolitan area of Washington, D.C., they are also separate and distinct communities comparable to Cleveland and Bradley County being within the metropolitan area of Chattanooga, Tennessee, but separate and distinct.

After brief argument, the trial court announced its ruling as follows:

I do realize that this issue of satisfaction of the locality rule was raised by the [Bradley-Polk Defendants]' motion in limine and was ruled upon in February by Chancellor Bell. However, I do not believe that the Court is now bound by this previous ruling.

The motions in limine were based upon the two affidavits of Dr. Ross and the two depositions of Dr. Ross during discovery and for the purposes of a motion for summary judgment. I think the argument is properly raised again and is proper for renewed discussion at the trial level and proper when Dr. Ross's testimony is purported to be introduced at this time.

\* \* \*

It appears that Dr. Ross satisfies those requirements of the [Tennessee Medical Malpractice Act other than] the locality rule. . . .

There[] [are] two ways to satisfy the locality rule. First is the firsthand knowledge of the standard of care in the community or proving the community in which the expert practices and has firsthand knowledge of is a similar community to Cleveland or Bradley County or the community in which the defendant practices.

The locality rule provides that the plaintiff who chooses to prove the standard of care in a similar community necessarily must prove that that community is similar to the one in which the defendant doctor practices.

\* \* \*

Here, after hearing Dr. Ross's testimony I consider that there were major differences in our communities and Dr. Ross's community. The population of the community in which Dr. Ross practices, the county in which he practices, is over one million . . . . Bradley County is very different in population than Fairfax County.

The legislature in Tennessee, by adopting the Tennessee Medical Malpractice Act, has recognized that Tennessee has an interest in assuring doctors in Tennessee receive fair assessment of their conduct in relation to the community where . . . they practice.

Therefore, after giving consideration to this matter, . . . I find that Dr. Ross's community is very different than the Bradley County/ Cleveland community and, therefore, is not a similar community when considered under the locality rule. Therefore, I am disallowing Dr. Ross's testimony for failure to satisfy the locality rule.

Understandably, the ruling created some confusion and discussion between the court and counsel about whether and how the trial would proceed. Immediately, the Plaintiffs' counsel asked if the trial court would be willing to "certify" the question of Dr. Ross's qualifications so that the ruling could be appealed. The court indicated that it would be willing to allow an interlocutory appeal. The Bradley-Polk Defendants' counsel moved for an involuntary dismissal and noted that the Plaintiffs could go forward with their case hoping to obtain proof to support their case through the Defendants' experts and then take a nonsuit if they did not. Counsel for the Bradley-Polk Defendants also argued that an interlocutory appeal in the middle of trial was not an acceptable procedure. The Plaintiffs' counsel confirmed his understanding of his right to announce a voluntary nonsuit, but ultimately asked "that the court cancel the current trial setting and reset this case and give us an opportunity to retain other expert witnesses." Counsel for the Bradley-Polk Defendants argued:

There's no such thing, that I'm aware of, procedurally, as a continuance when a jury is seated. So that is just a nonstarter.

Your Honor, what I believe is appropriate and what I discussed with Mr. Boehm is that . . . the parties stipulate and agree that there is no other evidence that could be presented in this case that would establish a breach of the standard of care as required by Tennessee law. Therefore, the defendants would be entitled to a directed verdict

-6-

and judgment entered in favor of Bradley-Polk OB/GYN Services and Dr. Michelle Perry. Judgment would go down. Then, at which time, the [P]laintiffs could appeal, as a matter of right. . . . I don't know if they'd reconsider or not . . . .

Counsel for the Bradley-Polk Defendants then asked, "Is that correct, Mr Boehm?" Counsel for the Plaintiffs responded, "I'm agreeable that that's the procedural way to handle this." Upon conclusion of the argument of counsel, the court ruled as follows: "I'm completely agreeable, and I think that's the proper way to handle this, as opposed to trying to continue the case. I don't think that's the proper procedural way to handle this at this point." The trial court entered judgment in accordance with its oral ruling, and this timely appeal followed.

## II.

The issues for appeal as stated by the Plaintiffs are as follows:

Whether the Trial Court erred by re-opening the dispositive motions in violation of Rules 6.02 and 16.01 of the Tennessee Rules of Civil Procedure.

Whether the Trial Court erred by failing to uphold its previous ruling that Plaintiff's expert, Dr. Michael A. Ross, satisfies the Tennessee Locality Rule set forth in Tenn. Code Ann. § 29-26-115.

Whether the Trial Court erred by dismissing the suit with prejudice and failing to grant Plaintiffs a continuance, right to amend the scheduling order, or voluntary dismissal without prejudice.

Whether the Trial Court erred by reversing itself, absent extraordinary circumstances, in violation of the "Law of the Case" doctrine.

## III.

We begin with the issue of Dr. Ross's qualifications because, if the trial court was wrong to exclude Dr. Ross, the judgment must be vacated and the case remanded for a new trial. Appellate courts reviewing a trial court's decision "regarding the qualifications or competency of a patient's medical expert employ the 'abuse of discretion' standard." *Kenyon v. Handal*, 122 S.W.3d 743, 759 (Tenn. Ct. App. 2003) (*quoting Robinson v. LeCorps*, 83 S.W.3d 718, 725 (Tenn. 2002)). "Accordingly, appellate courts will set aside a discretionary decision [to exclude an expert] only where the trial court has misidentified, misconstrued, or misapplied the controlling legal principles, or the decision is contrary to the substantial weight of the evidence." *Pullum v. Robinette*, 174 S.W.3d 124, 134 (Tenn. Ct. App. 2004).

A plaintiff's burden of proof in a medical malpractice action includes the burden of proving "[t]he recognized standard of acceptable professional practice in the profession and the speciality thereof, if any, that the defendant practices in the community in which the [defendant] practices or in a similar community at the time the alleged injury or wrongful action occurred." Tenn. Code Ann. § 29-26-115 (a)(1) (Supp. 2008). This burden must be met by a qualified expert. *Williams v. Baptist Memorial Hosp.*, 193 S.W.3d 545, 553 (Tenn. 2006).

> [A] patient's expert in a medical malpractice case must have knowledge of the standard of professional practice in the community where the defendant physician practices or in a similar community. *Robinson v. LeCorps*, 83 S.W.3d at 724. The expert is not required to be familiar with all the medical statistics of the community where the physician practices. *Ledford v. Moskowitz*, 742 S.W.2d 645, 648 (Tenn. Ct. App. 1987). However, the expert must go further than simply asserting that he or she is familiar with the applicable standard of care. *Mabon v. Jackson-Madison County Gen. Hosp.*, 968 S.W.2d [826, 831 (Tenn. Ct. App. 1997)]. The expert must present facts demonstrating how he or she has knowledge of the applicable standard of professional care either in the community in which the defendant physician practices or in a similar community. *Spangler v. East Tenn. Baptist Hosp.*, No. E1999-01501-COA-R3-CV, 2000 WL 222543 at *1-2 (Tenn. Ct. App. Feb. 28, 2000) perm. app. denied (Tenn. Sept 11, 2000).

*Kenyon*, 122 S.W.3d at 761-62. The community upon which the expert bases his or her opinion, if not the same community where the defendant practices, must be "shown to be similar to the defendant's community." *Robinson*, 83 S.W.3d at 724 (italics omitted).

As we discussed in *Farley v. Oak Ridge Medical Imaging*, No. E2008-01731-COA-R3-CV, 2009 WL 2474742 (Tenn. Ct. App., E.S., filed August 13, 2009), parties and their experts have satisfied this "locality rule" in a variety of ways with a variety of information. In *Taylor v. Jackson-Madison Cty. Gen. Hosp.*, 231 S.W.3d 361 (Tenn. Ct. App. 2006), an emergency physician with a practice in Atlanta was allowed to testify that Jackson, Tennessee, was similar to Gainesville, Georgia, a community about 40 miles north of Atlanta where the expert also practiced emergency medicine. The comparison was made based on information gleaned from phone books, chambers of commerce for the respective communities and information available from the hospitals in the communities. *See Farley*, 2009 WL 2474742 at *10. In *Bravo v. Sumner Regional Health Systems*, 148 S.W.3d 357 (Tenn. Ct. App. 2003), an Atlanta physician was qualified to testify that Rome, Georgia, was similar to Gallatin, Tennessee, based on referrals he received from physicians in Rome, Georgia, his review of records from that community, and information gained from seminars. *See Farley*, 2009 WL 2474742 at *10. In *Stovall v. Clark*, 113 S.W.3d 715 (Tenn. 2003), a Missouri doctor was allowed to testify that Marshall, Missouri, was similar to Franklin, Tennessee, based on his review of demographic information and his previous involvement as an expert in Tennessee having reviewed "over 20 charts." *Farley*, 2009 WL 2474742 at *10 (*quoting Stovall*, 113 S.W.3d at 719). One of the cases we discussed in *Farley* was *Ledford*, 742 S.W.2d at 645,

which involved the community of Cleveland, Tennessee. The plaintiff's expert practiced in Atlanta but testified of "'familiarity with the standard of care in small towns all over Georgia' from accepting referrals and interacting with the referring doctors." *Farley*, 2009 WL 2474742 at *11 (*quoting Ledford*, 742 S.W.2d at 648). The Atlanta neurologist was thus allowed to testify that the standard of care for psychiatrists in Cleveland would be the same as the standard of care for psychiatrists in similar "small towns" neighboring Atlanta. *Id*.

In *Farley* we concluded our survey of the cases by stating:

> If the expert is otherwise qualified, it is enough if he or she is actually practicing in some community in a contiguous state, and "connects the dots" between the standard in that community and the community where the alleged malpractice occurred. The fact that the dots must traverse from the community of practice through the similar community to the community of the alleged malpractice, such as from Kansas City, Missouri, through St. Joseph, Missouri, to Clarksville, Tennessee, will not defeat the connection. Referrals from and interaction with medical providers in neighboring communities, combined with "a comparison of information such as the size, location, and presence [or absence] of teaching hospitals in the two communities" should suffice.

*Farley*, 2009 WL 2474742 at *11.

With *Farley* and the cases we summarized therein in mind, we conclude that the trial court abused its discretion in disqualifying Dr. Ross. We are aware that *Farley* had not been decided when the trial court had to rule. We also acknowledge that the question of whether an expert is qualified under the locality rule is an area fertile with misunderstanding that often involves "the tedious exercise of hair-splitting." *See Carpenter v. Klepper*, 205 S.W.3d 474, 484 (Tenn. Ct. App. 2006). However, we believe that comparison of the testimony of Dr. Ross to the testimony that met the locality rule in the cases we discussed in *Farley* should have led the trial court to the conclusion that Dr. Ross was familiar with the standard of care for obstetricians practicing in communities shown to be similar to Cleveland and Bradley County.

The fundamental problem we have with the trial court's ruling is that upon hearing that the smaller communities of McLean and Point Royal, Virginia, were within the realm of a large metropolitan area, the trial court considered only the larger community and refused to consider the smaller communities and their similarities that Dr. Ross identified. Certainly the case law does not support the proposition that an expert with a practice centered in a large metropolitan area is disqualified to talk about a small community in Tennessee despite his involvement in similar small communities that are in or near his primary practice community. To the contrary, experts who practice in large cities have been allowed to testify that smaller satellite communities are similar to small Tennessee communities, including Cleveland. *See, e.g.*, *Ledford*, 742 S.W.2d at 648; *Bravo*, 148 S.W.3d at 361. (A physician with an Atlanta practice was allowed to testify to a deviation of the standard of care in Gallatin, Tennessee, based on referrals he received from Rome, Georgia.)

Nor do we believe that the record in this case supports the trial court's analysis since Dr. Ross testified that McLean, Virginia and Warren County, Point Royal, Virginia, are distinct communities with a separate identity despite their proximity within the Washington D.C. metropolitan area. Dr. Ross identified similarities including population, medical facilities, medical personnel, and proximity to larger medical communities. We have previously observed that similarity is all that is required as no two communities will be identical. ***Lane v. McCartney***, No. E2008-02640-COA-R3-CV, 2009 WL 2341536 (Tenn. Ct. App., E.S., filed July 30, 2009).

In summary, we hold that the Plaintiffs introduced ample evidence to show that Dr. Ross knew the standard of care at Reston Hospital in McLean, Virginia, and Warren Memorial in Warren County, Virginia. We also hold that the Plaintiffs introduced sufficient proof that the referenced communities were similar to Cleveland, Bradley County, Tennessee, at the time of the alleged malpractice. Accordingly, we hold that the trial court erred in disqualifying Dr. Ross under the locality rule. Since Dr. Ross was the Plaintiffs' only expert, we must return the case to the trial court for a new trial.

Our decision renders moot the other issues raised by the Plaintiffs. Accordingly, we do not reach them.

IV.

The judgment of the trial court is vacated. Costs on appeal are taxed to the appellees Bradley-Polk OB/GYN Services, P.C., and Michelle Y. Perry, M.D. This case is remanded, pursuant to applicable law, for further proceedings consistent with this opinion.

_____
CHARLES D. SUSANO, JR., JUDGE